Henryk Stefan DROBNY, Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 90–3190.

United States Court of Appeals,
Seventh Circuit.

Argued May 16, 1991.

Decided Oct. 21, 1991.

Rehearing Denied Jan. 9, 1991.

James Hallagan (argued), Joseph Minsky, Minsky, McCormick & Hallagan, Chicago, Ill., for petitioner.

Fred Foreman, U.S. Atty., Office of U.S. Atty., Criminal Div., Chicago, Ill., Alison R. Drucker, Mark C. Walters, Lori L. Scialabba, David J. Kline, Michele Y.F. Sarko (ar-

gued), Dept. of Justice, Office of Immigration Litigation, Washington, D.C., A.D. Moyer, I.N.S., Chicago, Ill., for respondent.

Before CUMMINGS, CUDAHY and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Henryk Drobny, a permanent resident, faces deportation to Poland for a narcotics conviction. The Immigration Judge (IJ) found Drobny deportable and denied him a waiver under section 212(c) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1182 (1988), and the Board of Immigration Appeals (BIA) denied his appeal. Drobny now contends that his deportation hearing violated due process because (i) his English was so poor that he could not understand the proceedings; (ii) his mother, who speaks no English but was at the hearing to testify, was not furnished an interpreter; and (iii) the IJ excluded all testimony by and about Drobny's girlfriend, including her possible pregnancy with Drobny's child.

### I.

Drobny, a citizen of Poland, was admitted to the United States as a lawful permanent resident on August 27, 1979, when he was sixteen. His testimony indicated that in Poland he finished grammar school and one year of high school and in the United States he went to night school for one year to learn English. He has lived with his mother, who is also a legal alien. He stated that he does not use or deal in drugs. At the time of the hearing he was not employed, but he has held previous jobs, including a recent stint as a butcher. He last saw his father, who is in Poland and divorced from his mother, when he was two years old.

In the fall of 1986 Drobny was convicted, pursuant to a guilty plea, of delivering about five grams of cocaine to an undercover policeman in January 1985. He received a sentence of three years probation, the first year of which included weekends in jail. Since then, Drobny's only other brushes with the law were a speeding violation and the discovery of a marijuana cigarette in a car in which he was a passenger (no charges were filed). Drobny recalled being arrested for theft in 1983, but the charges were dropped. R. 100.

The INS charged Drobny with deportability under section 241(a)(11) of the Act.[1] At his hearing Drobny admitted the conviction but requested a waiver of deportation under section 212(c),[2] which vests the Attorney General with discretionary authority to admit or suspend deportation of a permanent resident who has resided in the United States for at least seven years.

At the hearing Drobny's attorney, who showed up forty-five minutes late, began asking Drobny about his relationship with Anna, his girlfriend. The IJ refused to permit the inquiry on the basis that Drobny and Anna were not married and that their relationship was not a "status" recognized under the Act. The IJ refused to permit Anna to testify for the same reason and also refused to permit testimony regarding Anna's possible pregnancy. The IJ characterized both the possibility of the couple's marrying and the possibility of pregnancy as nascent equities, neither of which is a

---

1. This section provides for deportation of an alien:

 (11) who ... at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana....

 8 U.S.C. § 1251(a)(11) (1988).

2. This section provides:

 Aliens lawfully admitted for permanent resident [sic] who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than subparagraphs (A), (B), (C), or (E) of paragraph (3)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years.

 8 U.S.C. § 1182(c) (1988).

current "status" relevant for waiver consideration.

Drobny's mother, Helen, who speaks little or no English, also appeared at the hearing to testify. When Drobny's attorney introduced Helen, suggesting that Anna interpret, the IJ, dismayed at not having been alerted earlier to the need for an interpreter, refused to let Anna interpret because of her relationship to Drobny. The IJ accepted this offer of proof from the attorney:

> Your Honor, the witness would testify that ... substantiating the facts that Mr. Drobny has not seen his father since he was two years old. The elderly condition of the grandmother who partially raised him and would have also testified as to the fact that while Mr. Drobny was employed he did contribute towards his support. When he lived with his mother while he was employed he paid room and board to his mother.

R. 107. Helen did not thereafter testify.

The IJ found Drobny deportable for his narcotics conviction. The decision also denied Drobny's request for 212(c) relief, based on a balancing of favorable and unfavorable factors pursuant to *In re Marin*, 16 I & N Dec. 581 (BIA 1978). Whatever factors Drobny had in his favor, concluded the judge, were outweighed by the seriousness of the crime and the absence of ties Drobny had established in his community. The judge determined that because Drobny had been convicted of a "serious crime," he needed—and failed—to show "unusual or outstanding equities" to be eligible for 212(c) relief under *In re Buscemi*, 19 I & N Dec. 628 (BIA 1988). The opinion mentions Drobny's relationship with his mother but does not refer to Anna or the possible pregnancy. "[H]e does not have a wife or child who are dependent upon him for support." R. 46. The judge also felt that Drobny made no "affirmative showing" of rehabilitation and had not expressed regret or remorse for his crime. "In short, he has not shown that he has endeavored to make a meaningful change in his life since his conviction." R. 47.

Drobny appealed to the BIA, which affirmed the IJ. The Board's opinion first holds that Drobny's deportability was established by "clear, unequivocal and convincing evidence," pursuant to *Woodby v. INS*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). The opinion also upheld the denial of Drobny's 212(c) motion but noted that rehabilitation was not a prerequisite for section 212(c) relief but merely one of several factors to be taken into account, citing *In re Edwards*, Interim Decision 3134 (BIA 1990). The Board emphasized that

> whether or not it is in the best interest of the United States to allow the respondent to remain in this country, the respondent's case should be simply a balancing of the favorable and adverse factors he presents in support of his application for a waiver. Whether or not there are any "outstanding equities" required under *Matter of Buscemi*, in order for an alien to be granted a waiver is of no bearing in this case.

Op. at 3. The opinion concludes, despite the IJ's possible *Buscemi* error, that the balance of equities supported Drobny's deportation. "The evidence presented displays nothing to persuade us that it is in the best interest of the country to allow an alien who has violated our laws, particularly a narcotics violation, to remain here as a lawful permanent resident." *Id.* From this decision Drobny now appeals.

## II.

### A. *Standard and Scope of Review*

■ Judicial review is provided by 8 U.S.C. § 1105a(a)(4) (1988), which provides, "[T]he petition [for review] shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive." All issues of law we review *de novo*. *Barraza Rivera v. INS*, 913 F.2d 1443, 1448 (9th Cir.1990). We must decide whether the absence of a translator for Drobny or his mother violated procedural

rights ensured by the Act or the due process clause. We must also assess whether the IJ was correct in excluding consideration of Drobny and Anna's relationship, including the possibility of pregnancy, as a factor to be considered by the IJ under section 212(c).

### B. *Entitlement to Translator*

#### 1. Drobny

■ It is well established that the subject of a deportation hearing enjoys due process rights. *Japanese Immigrant Case*, 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721 (1903); *Kaczmarczyk v. INS*, 933 F.2d 588 (7th Cir.1991). Congress has set by statute certain standards a fair hearing must include, 8 U.S.C. § 1252(b) (1988), among which is the requirement that

> the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government; ...

8 U.S.C. § 1252(b)(3). In addition, INS regulations require that the alien have the opportunity to present and understand evidence. 8 C.F.R. § 236.2 (1990) ("The Immigration Judge shall ... advise [the alien] that he will have a reasonable opportunity to present evidence in his own behalf, to examine and object to evidence against him, and to cross-examine witnesses presented by the Government.").

■ Drobny first claims that his English was too poor for the hearing to be conducted without a translator. As part of the right to present evidence and to cross-examine witnesses, an alien who does not understand English has the right to a translator. *Tejeda–Mata v. INS*, 626 F.2d 721, 726 (9th Cir.1980), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982); *Niarchos v. INS*, 393 F.2d 509, 511 (7th Cir.1968). But the decision whether an alien needs translation services is clearly within the discretion of the immigration judge, a decision we will not overturn absent an abuse of discretion. *Cf. El Rescate Legal Services, Inc. v. Executive Office for Immigration Review*, 727 F.Supp. 557, 560 (C.D.Cal.1989) ("Unless they can hear in their own language what transpires, the aliens' ability to participate in and respond to the proceedings is doubtful and their right to be present is meaningless."), *rev'd*, 941 F.2d 950 (9th Cir.1991) (affirming "reasonable opportunity to be present, to examine and present evidence" but holding state not obligated to provide translation of entire proceeding). The IJ directly checked at least twice whether Drobny understood English well enough to proceed.

Q: Sir, when I spoke to you earlier you seemed to understand me. Do you speak English?

A: 1 understand.

R. 51 (Aug. 5, 1986).

Q: Sir, do you speak any English?

A: Yes.

Q: Okay. You say you do. Do you speak English well enough to answer questions in this proceeding?

A: I ...

Q: You have been in the United States since 1979. Do you speak English, sir?

A: Yeah.

R. 59 (Sept. 30, 1986). Moreover, Drobny's attorney, present at the time of the September 30 exchange, did not object to the absence of an interpreter. These excerpts, along with Drobny's undeniable ability to answer many questions, are substantial evidence that his English was sufficient for him to understand.

Examining the transcript, we find two instances that give us some pause. The first:

Q: Okay. Was the ... the night school you went to to learn English or for any other reason?

A: No, to learn English.

R. 77. The second involved the opportunity that the IJ afforded Drobny to show remorse for his crime. Instead of indicating that he understood and regretted his conviction—the natural course for someone in this situation—Drobny appears perturbed at his not receiving a chance to explain that he had not used an alias:

Q: Mr. ... Mr. Drobny, how do you feel about this offense that you were con-

victed for? What do you think about it? ... [W]hat do you think?

A: No. I think ... it wasn't right.

Q: It wasn't right?

A: Yeah.

Q: What do you mean by that?

A: Cause I got ... convicted for a different name.... I never use it.[3]

Q: You think it wasn't right that they convicted you?

A: Yeah. And in court ... they didn't let me say not even a word.

R. 101.

Although these exchanges could support an inference that Drobny's English was not perfect, we must look at the entire context of the hearings. We conclude that the IJ's exploration of Drobny's English skills was adequate and that he was therefore not denied a reasonable opportunity to present evidence or be present in a meaningful way. Neither the fundamental fairness of his hearing nor his statutory right to be meaningfully present was impaired.

### 2. Helen

■ Drobny also alleges error in the IJ's refusal to permit Anna to translate for Helen. (Neither Drobny nor his attorney requested a translator earlier, as they should have.) The IJ instead accepted an offer of proof. The INS points out that Drobny did not present this challenge to the BIA and did not therefore exhaust his administrative remedies. 8 U.S.C. § 1105a(c) (1988); *Vargas v. INS*, 831 F.2d 906, 907 (9th Cir.1987) (affirming exhaustion principle except for procedural errors not correctable by the agency). We do not see this issue raised below.

However, we also see no reason why the judge's acceptance of the offer of proof did not suffice to protect the fairness of the proceeding. Drobny has raised no issues for which Helen's testimony was crucial. The only matters to which she apparently hoped to testify were Drobny's support, the fact that he lived with her and his complete unfamiliarity with his father. These were presented in Drobny's testimony or in the offer of proof, so the IJ did not fail to consider any matter that could have been presented. We conclude that the judge's acceptance of the offer of proof in lieu of a translation did not deny Drobny any process he was due.

### C. *Refusal to Permit Anna to Testify*

Drobny also contends that it violated his rights for the IJ to have denied Anna an opportunity to testify. The judge decided that the testimony would not be relevant because, despite the possibility that the two planned to marry, Anna did not meet the definition of family under section 244(a)(1)[4] and because he believed the relationship did not provide a basis for discretionary relief under section 212.

We initially note that Drobny appears to have waived this issue as well, since it does not appear in the BIA decision. Nonetheless, the section 244 issue was conclusively resolved in *INS v. Hector*, 479 U.S. 85, 107 S.Ct. 379, 93 L.Ed.2d 326 (1986), which restricts section 244(a)(1) considerations to the statutorily mentioned relationships of spouse, parent or child. The section 212 issue is an open question. The Board cites no authority for the proposition that section 212 excludes consideration of all relationships other than by marriage, but neither did Drobny develop an argument before the BIA as to why this is an abuse of discretion.[5] We therefore do not

---

**3.** Drobny's information listed as its subject "John Sieczka also known as Henry Drobny." Drobny denies that he ever used the alias. R. 97–98.

**4.** This section provides the Attorney General with discretion to suspend deportation for a deportable alien where the alien meets residency requirements, is of good moral character and is a person whose deportation would, in the opinion of the Attorney General, result in

extreme hardship to the alien or to his spouse, parent or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence....

8 U.S.C. § 1254 (1988).

**5.** It seems unlikely that Anna's testimony would have tipped the balance in Drobny's favor, since Drobny's testimony indicated that he did not know her last name. R. 86.

**246**

address the IJ's exercise of discretion in excluding consideration of this relationship.

 The issue of Anna's pregnancy is a different matter. After the IJ refused to permit Anna to testify, Drobny's attorney made an offer of proof that Anna would testify to being Drobny's girlfriend and that she was pregnant with his child. The judge accepted the offer of proof with this conclusion:

> Well, as I have indicated in my earlier ruling I think the ... that evidence would be irrelevant to this proceeding whether the respondent has a relationship with the woman, what his intentions whether marriage or not, whether or not there is ... whether the child has been conceived. The fact is that all of these are [nascent] equities, unrealized possibilities and they don't exist at the moment and I have to consider the situation as it exists now. I have to make my decision now and the ... whatever favorable consideration the respondent wants to present must exist at the moment and can not be a possibility for the future. And I think given that ... given that view, which I think is supported by the Court's decisions, I have to reject as irrelevant and immaterial any testimony whether it be either in the form of an offer of proof or live testimony of a ... of a girl friend concerning her relationship or concerning the fact that she may have conceived a child with the respondent.

R. 106.

We believe the IJ committed clear error in referring to the possibility of Anna's pregnancy as being irrelevant to his decision. If Anna were pregnant, Drobny may have a child for section 244 purposes and would also have very strong equities in his favor under section 212. The judge abused his discretion in not inquiring further regarding the possibility of the unborn child.

However, the issue appears now to be moot because, as mentioned by Drobny's attorney at oral argument, Anna may have miscarried. This appears in neither brief and is not a matter of record. Because of the importance of the issue, we must ask the IJ to inquire as to Drobny's potential paternity, an inquiry that was proper at the time of the hearing.

### III.

The process afforded Drobny in this proceeding bears signs of shoddiness. The attorney showed up late at the hearing. The IJ excluded testimony about Drobny's potential paternity that should have been examined. We received no reply brief in this appeal, which is particularly unhelpful in light of the exhaustion arguments. Based only on the evidence in the record, we could affirm the IJ's exercise of discretion. We believe, however, that there has been insufficient effort to ascertain the facts of Drobny's potential paternity. We must, therefore, remand on this point.

VACATED and REMANDED.