966 F.2d 1457
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Mieczyslaw SZCZECH, Marian Wilamowski, and Edward Chrzascik,
Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 Nos. 90-2307, 91-2584 and 91-2642.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 26, 1992.[1]
Decided June 9, 1992.
 
 Before EASTERBROOK and KANNE, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.
 
 ORDER
 
 1
 Although these three appeals were brought separately, briefed separately, and are not related, they share common legal questions. We therefore consolidate them for disposition. They concern the ability of former Polish Solidarity movement members to avoid deportation by claiming political asylum. We affirm each case.
 
 I. FACTS
 A. Mieczyslaw Szczech
 
 2
 Mieczyslaw Szczech is a Polish citizen who illegally entered the United States in 1984 to escape the government abuse he endured due to his membership in the outlawed Solidarity labor-union movement. Although not a primary Solidarity leader, Szczech was a prominent local organizer. His Solidarity activity resulted in his arrest on eight or nine occasions. Each time Szczech was arrested, he was detained 24-48 hours, questioned several times, and beaten. His home was searched often during these detentions. Authorities also approached his family in an intimidating manner, his brother once having been arrested and questioned regarding the petitioner's Solidarity activities.
 
 
 3
 In 1985, the Immigration and Naturalization Service commenced deportation proceedings against Szczech. Szczech concedes he qualifies for deportation, however he seeks asylum pursuant to the Immigration and Nationality Act. 8 U.S.C. § 1158 (1992). The immigration judge found that Szczech's participation in Solidarity had not reached the level which would result in the Polish government pinpointing him for persecution and that Szczech did not qualify for asylum. He was ordered to voluntarily leave this country or be deported. Szczech appealed the order to the Board of Immigration Appeals ("BIA"). The BIA took administrative notice of the changed circumstances in Poland: that Lech Walesa, the leader of the Solidarity movement, has been elected President. In light of the new government, the BIA found that Szczech would not be a government target for arrest and therefore Szczech did not possess a well-founded fear of persecution. Despite the change in circumstances, Szczech maintains that the police force and army continue to commit human rights violations. The BIA also found that Szczech's former treatment did not rise to a level that would allow asylum despite no well-founded fear of future persecution. Matter of Chen, Interim Decision 3104, BIA, 1989.
 
 B. Marian Wilamowski
 
 4
 Marian Wilamowski, a Polish citizen, entered the United States on a six-month visa as a visitor for pleasure. Like Szczech, Wilamowski acknowledges that he is deportable. While in Poland, Wilamowski worked as a crane operator. He fled Poland due to mistreatment by government authorities for his activities in the Solidarity movement. These activities included meeting with Lech Walesa on two occasions, sabotage of a Soviet building during his employment as a crane operator, and distribution of leaflets. Wilamowski was arrested, interrogated, and beaten on seven occasions between July 1982 and May 1984. Detention during his arrests was approximately 48 hours on each occasion. Wilamowski was threatened with terms of imprisonment (including life) and labor at a Siberian work-camp. He had difficulty finding work during the harassment period, but when he was employed, he was sent to work sites all around Poland, thus separated from his wife and child. Wilamowski asserts that his return to Poland would be unsafe.
 
 
 5
 The immigration judge found that Wilamowski's treatment at the hands of Polish authorities did not rise to the level of persecution. Additionally, the judge found that that the fear of future persecution was not well-founded because the Solidarity party controlled several important Polish ministries. The BIA affirmed the decision by dismissing the appeal, holding that the Solidarity-controlled government diminished the fear of future persecution, despite Wilamowski's assertion, like Szczech's, that the police and military remain in communist control. The BIA also held that Wilamowski's former treatment was not severe enough to block repariation on that basis alone.
 
 C. Edward Chrzascik
 
 6
 Edward Chrzascik is also a Polish citizen who was involved with the Solidarity movement. As a Solidarity member, Chrzascik stored, printed, and distributed leaflets in support of the labor union, as well as stored Solidarity flags and banners. He was alerted that suspicious people had been peering in his house, so he smuggled the Solidarity contraband from his home the night before it was raided by Polish militia and secret police. Chrzascik was arrested the morning of the raid, interrogated, and beaten about the head and body with a lead pipe. He was arrested on several more occasions, at which times he was threatened, beaten, and detained for more than eight hours. In addition to physical and emotional suffering, he experienced economic harm when he was denied a pay increase that was uniformly given to all workers at the plant where he worked, except for those workers who were politically active. In 1985, Chrzascik left Poland and came to the United States. After his departure, Chrzascik's wife was questioned, harassed, and threatened. Because of his association with Chrzascik, his brother-in-law was fired from his job. Chrzascik states that the police and army continue to dispense the same treatment which he suffered prior to fleeing Poland.
 
 
 7
 Like Szczech and Wilamowski, Chrzascik seeks political asylum. The immigration judge, using a standard which has since been made less strict, found that Wilamowski had not made the necessary showing to receive political asylum. On review, the BIA applied the proper standard, INS v. Cardoza-Fonesca, 480 U.S. 421, 107 S.Ct. 1207 (1987), and held that Chrzascik did not establish that he possessed a well-founded fear of persecution in Poland which would merit political asylum status in the United States. The BIA also held that the former treatment Chrzascik received from Polish authorities was not so severe as to warrant asylum.
 
 II. ANALYSIS
 
 8
 The Attorney General has discretion to grant applications for political asylum. 8 U.S.C. § 1158(a) (1992). If a alien is unwilling or unable to return to his or her country of origin because of a well-founded fear of government persecution, that alien may be considered a refugee and may then be eligible for political asylum. 8 U.S.C. § 1101(a)(42)(A) (1992). Persecution is the suffering of harm upon those who differ in a manner regarded as offensive, in race, religion, nationality, membership in a particular social group, or political opinion. Zalega v. INS, 916 F.2d 1257, 1260 (1990). Refugee status is a question of fact. Kaczmarczyk v. INS, 933 F.2d 588, 593 (7th Cir.1991). Factual findings made by the Attorney General will be upheld if they are supported by reasonable, substantial, and probative evidence from the record considered as a whole. 8 U.S.C. § 1105a(a)(4) (1992); Drobny v. INS, 947 F.2d 241, 243 (7th Cir.1991). Issues of law will be reviewed de novo. Drobny, 947 F.2d at 243. The Attorney General's decision denying political asylum is reviewed to insure that it is not arbitrary and capricious. Kaczmarczyk, 933 F.2d at 593.
 
 
 9
 The BIA's official notice of Poland's changed circumstances is an acceptable procedure pursuant to Kaczmarczyk, 933 F.2d at 593. All petitioners argue that the police and military are controlled by the same regime that inflicted the abuse occurring before the Solidarity control. Even if this allegation is true, the unlikeliness of persecution for Solidarity reasons, given that Solidarity controls the government, does not indicate a well-founded fear. Skalak v. INS, 944 F.2d 364, 365 (7th Cir.1991).
 
 
 10
 An alien may also attain refugee status if past persecution was so severe that it deeply tainted a person such that repatriation would be inhumane. Id. We have cited as an example the survivors of Nazi concentration camps being forced to return to Germany. We hypothesized that even this severe level of past persecution may not be enough to attain refugee status if the persecuted group was governing the country of origin. Id. Each of the petitioners suffered physical harm, and in one case, economic harm. We need not decide if this treatment was persecution, see Zalega, 916 F.2d at 1260, because although not as slight as the treatment in Skalak, whatever the minimum level of past persecution may be to avoid repatriation, the treatment inflicted upon the petitioners was not so severe that they cannot be repatriated.
 
 III. CONCLUSION
 
 11
 Substantial evidence supports the BIA decisions. For this reason, we AFFIRM.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Edward Chrzascik filed a such a statement. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs