Natalia NAZAROVA, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 97–3261.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1998.

Decided March 19, 1999.

David Rubman, Susan Compernolle (argued), Rubman & Compernolle, Chicago, IL, for Petitioner.

Samuel Der-Yeghiayan, Immigration & Naturalization Service, Chicago, IL, Brenda E. Ellison (argued), David V. Bernal, Department of Justice, Civil Division, Immigration Litigation, Washington DC, for Respondent.

Before MANION, ROVNER, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Natalia Nazarova entered this country from her native Ukraine. There is now a deportation order against her, entered in her absence because she was two hours late for her deportation hearing. The delay occurred because Nazarova's interpreter was late for the hearing, and Nazarova (who speaks only Russian) had chosen to wait for him rather than risk an incomprehensible proceeding before the Immigration Judge ("IJ"). If the INS were to prevail in its opposition to the petition before us, Nazarova would be deported without ever having received a meaningful opportunity to be heard. Because, on the unique facts present here, we believe that Nazarova's constitutional right to due process of law has been violated, we remand her case to the immigration authorities for further proceedings.

## I

Nazarova entered the United States on February 15, 1993. Her entry papers permitted her to stay in this country until April 14, 1994. Shortly after her arrival, she filed an application for political asylum based on her fear of persecution as a Jew. On May 11, 1994, the INS denied that application and instituted deportation proceedings against her by serving her with an "Order To Show Cause and Notice of Hearing." (The date of this action suggests that Nazarova's application for asylum was filed prior to April 14, 1996, but we cannot find the precise date of filing in

the record.) The order to show cause document was printed in English and Spanish. It showed the date of the deportation hearing as August 19, 1994, and it included two pages of information entitled "Notice of Rights and Consequences of Failing to Appear." One possible consequence of failing to appear, it warned, is deportation *in absentia*.

Because the order to show cause did not contain information about the availability of interpreters, and knowing that she would need one, Nazarova asked her former employer, Rita Aizenberg, to contact the office of the IJ on her behalf to inquire whether an interpreter would be available at the hearing. The person at the IJ to whom Aizenberg spoke assured her that the "court" would provide an interpreter for Nazarova. Relying on this information, Nazarova took no steps to find her own interpreter and attended the August 19 hearing alone.

When she arrived at the hearing, however, there was in fact no interpreter present. This hearing turned out to be a master calendar hearing, at which pending matters were either quickly dispatched or rescheduled. The IJ spoke to Nazarova in English. As she recounts it, she understood little to nothing of what transpired orally, but she did receive a new written notice of hearing with a later date, from which she gleaned that her hearing had been rescheduled for October 7, 1994 at 10 a.m. That notice, like the first, was printed only in English and Spanish; once again, it specified the potential consequences of failing to appear.

Given her experience at the master calendar hearing—one reminiscent of that of Richard Gere's character Jack Moore in the 1997 movie *Red Corner*—Nazarova made certain to hire an interpreter to accompany her to the merits hearing. When that date arrived, Nazarova set off to meet her interpreter in plenty of time for her 10:00 a.m. hearing. Unfortunately, he was not at his office. At that point Nazarova believed that she was on the horns of a dilemma: should she go to another hearing at which she understood nothing, and could convey nothing, or should she wait for the interpreter? She chose to wait, and wait she did for nearly two hours. When he arrived at last, the two proceeded immediately to the hearing room, arriving right around noon. There she discovered to her dismay that the IJ had already held her deportation hearing in her absence. He held that Nazarova had received notice of the hearing, that the INS had established her deportability, and that, by failing to appear, Nazarova had failed to establish her entitlement to relief from deportation. On that basis, the IJ deported her to Russia. (This was, of course, an embarrassing error for an IJ to make. Although Nazarova speaks Russian, she is Ukrainian, and any deportation order should have specified the Ukraine as her destination. For an American IJ to deport a Russian-speaking Ukrainian to Russia is the same as if a Ukrainian Immigration Judge were to deport an English-speaking American to England.)

Less than a week later, Nazarova submitted a handwritten motion to reopen, explaining her failure to appear at the specified hour as a consequence of her interpreter's late arrival. This motion was eventually denied. Several months later, Nazarova, this time through counsel, again moved to reopen her case. She again argued that her interpreter's lateness constituted an exceptional circumstance sufficient to justify her failure to appear, and she added the new complaint that the notice of hearing she received was inadequate because the consequences of a failure to appear, though recited in English and Spanish, were not made known to her in Russian. This motion, too, was denied. Finally, Nazarova pressed her inadequate notice claim before the Board of Immigration Appeals ("BIA"). That body also denied her relief, holding that Nazarova had received adequate notice of the consequences of failing to appear. This petition for review followed.

## II

■ The INS first challenges our jurisdiction to hear this petition. It correctly notes that § 242B(c)(4) of the Immigration and Nationality Act confines appellate judicial review of deportation orders entered *in absentia* "to the issues of the validity of the notice provided to the alien, to the reasons for the alien's not attending the proceeding, and to whether or not clear, convincing, and unequivocal evidence of deportability has been established." 8 U.S.C. § 1252b(c)(4). The INS believes that Nazarova has waived or conceded each of these potential grounds for appeal.

We find no jurisdictional bar to our review. While it is true that Nazarova has never challenged the evidence of deportability, her arguments before the IJ, before the BIA, and before this court have all addressed the adequacy of the notice she received and her reasons for not timely attending her deportation hearing. She has not therefore conceded each of the statutory grounds for appeal.

■ Furthermore, even if her arguments below were imprecise renditions of the arguments that will eventually win the day on appeal, that raises at most the specter of forfeiture, and forfeiture is not a jurisdictional bar. *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). This court retains the right, although not the obligation, to reach forfeited arguments, and it may choose to do so in the interests of justice. *Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1122 (7th Cir.1998).

## III

■ We review the denial of a motion to reopen a deportation order entered *in absentia* for abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323–24, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992). Nonetheless, whether an immigration proceeding violates due process is a purely legal issue, which we review *de novo. Hassan v. INS*, 110 F.3d 490, 493 (7th Cir.1997).

Section 242B of the Immigration and Nationality Act governs this case, which arose before the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, now in force. In deportation proceedings under section 242B, the alien must receive written notice of the time, date, and place of the proceedings; the consequences of a failure to appear for reasons other than the statutorily defined "exceptional circumstances"; and notification of the right to be represented by an attorney. 8 U.S.C. § 1252b(a)(2), (3). The printed notice must be in English and Spanish. § 1252b(a)(3)(A). If an alien fails to appear at the deportation hearing, she will be deported *in absentia* if the INS establishes that she received the statutorily required notice and that she is deportable. § 1252b(c)(1). Upon a motion to reopen, such a deportation order can be rescinded if the alien's failure to appear was due to "exceptional circumstances," defined as circumstances beyond the control of the alien "such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances." § 1252b(c)(3)(A), (f)(2). The deportation order may also be rescinded if the alien did not receive proper notice. § 1252b(c)(3)(B).

■ This statutory concern with notice has its genesis in the well-settled fact that aliens have due process rights in deportation hearings. See, *e.g.*, *The Japanese Immigrant Case*, 189 U.S. 86, 101, 23 S.Ct. 611, 47 L.Ed. 721 (1903); *Kaczmarczyk v. INS*, 933 F.2d 588, 595 (7th Cir.1991). The Supreme Court has long made clear that due process requires notice reasonably calculated to provide actual notice of the proceedings and a meaningful opportunity to be heard. In *City of West Covina v. Perkins*, —— U.S. ——, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999), the Court explained the notice requirement in these words:

A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("Th[e] right to be heard has little reality or worth unless one is informed that the matter [affecting one's property rights] is pending and can choose for himself whether to appear or default, acquiesce or contest").

*Id.* at 657; see also *Mathews v. Eldridge*, 424 U.S. 319, 348–49, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). What the Court said there about the importance of a meaningful hearing when property rights are at stake holds with equal force in the context of a deportation proceeding, where personal rights are on the line.

■ Nazarova first argues that the actual notice she received of the consequences of a failure to appear at the proceedings was inadequate because it was written in both English and Spanish, but not in Russian. She concedes that the notice met the statutory requirements in this regard, and thus her real argument is that the statutory requirements do not satisfy the dictates of due process. This is a broad and troublesome position: the logical implication is that the INS must maintain a stock of forms translated into literally all the tongues of the human race, and then select the proper one for each potential deportee. No court to our knowledge has ever held that the Constitution requires the INS to undertake such a burden, and we will not be the first.

■ It has long been established that due process allows notice of a hearing (and its attendant procedures and consequences) to be given solely in English to a non-English speaker if the notice would put a reasonable recipient on notice that further inquiry is required. See, *e.g.*,

*Toure v. United States*, 24 F.3d 444, 446 (2d Cir.1994) (approving inquiry notice in criminal forfeiture context); *Soberal–Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir.1983) (noting, in a social security benefits case, that "[a] rule placing the burden of diligence and further inquiry on the part of a non-English-speaking individual served in this country with a notice in English does not violate any principle of due process"); *Carmona v. Sheffield*, 475 F.2d 738, 739 (9th Cir.1973) (finding that due process does not require California to translate its notice of rights under the unemployment laws for non-English speakers). We see no reason why such inquiry notice should not be sufficient in the deportation context as well. In fact, in this very case the initial notice Nazarova received was entirely sufficient to put her on inquiry notice. She properly identified it as something important and enlisted Aizenberg's help in translating it and in contacting the INS for further information. If her only complaint about the second notice was the fact that it, too, was in English (and Spanish, though the Spanish is irrelevant in her case), we would be compelled to reject her argument. But there is more that distinguishes Nazarova's situation from the ordinary one.

■ Even if the notice of the second hearing was technically adequate in isolation, by the time she received it Nazarova had also learned from the INS itself one more fact, as a result of the way it conducted the first hearing she attended: that, contrary to the telephonic advice Aizenberg had received, she would have to find her own interpreter. Whether or not there is an interpreter at a hearing is a fact that goes not to the existence of notice, but to the achievement of its purpose—the meaningful opportunity to be heard. Late in her brief, Nazarova contends that the notice she received, which was silent as to the provision of interpreters, and the affirmative misinformation the INS had relayed through Aizenberg cumulated to jeopardize her opportunity to be

heard. Although we have rejected the other notice-based arguments that she pressed with greater vigor, we find merit in this final point.

■ On the unusual facts of this case, Nazarova received adequate notice, but she did not receive a meaningful opportunity to be heard. A non-English-speaking alien has a due process right to an interpreter at her deportation hearing because, absent an interpreter, a non-English speaker's ability to participate in the hearing and her due process right to a meaningful opportunity to be heard are essentially meaningless. See *Drobny v. INS*, 947 F.2d 241, 244 (7th Cir.1991). Sometimes the need for an interpreter is so strong on the facts of a given case that the government must itself supply an interpreter. See, *e.g.*, *United States v. Leon-Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994). Nazarova, of course, had no interpreter at her first hearing. This not only deprived her of a meaningful opportunity to participate at that proceeding, but it also had the consequence of effectively misinforming her about her right to an interpreter at the rescheduled proceeding. Because of the INS, Nazarova thought it was her responsibility to find an interpreter, and she took steps to do so. She objects now to being penalized with deportation *in absentia* for her reasonable attempts to secure meaningful participation in the deportation hearing.

As we noted earlier, when Nazarova presented these facts to the BIA on appeal from the IJ's refusal to reopen the proceedings, the BIA ruled that Nazarova had failed to show exceptional circumstances that justified her "failure" to appear. "Exceptional circumstances," recall, are those beyond the control of the alien, "such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances." § 1252b(f)(2). The entire unfortunate chain of events leading to Nazarova's tardiness at her second hearing began with the INS's confusing and contradictory actions with respect to the interpreter question. When it failed to produce one at Nazarova's first hearing, she reasonably believed that the advice her employer had received over the telephone was in error and that she needed to find her own interpreter. Whether or not the INS gave consistent or accurate advice on this crucial aspect of the hearing was certainly a matter beyond Nazarova's control, and it made all the difference to the quality of the process she received.

■ We are aware that the standard of review from the BIA's decision not to reopen a case is abuse of discretion, but we find here that such an abuse occurred. Nazarova's "failure to appear," to the extent it was that and not simple tardiness, meets the statutory requirements for rescinding a deportation order due to exceptional circumstances. We also agree with the Second Circuit that, when an IJ's decision to enter an *in absentia* deportation order and her subsequent refusal to reopen the order threaten the alien's constitutional or statutory rights, circumstances may exist that are sufficiently exceptional to excuse nonappearance and warrant remand. *Romero-Morales v. INS*, 25 F.3d 125, 130 (2d Cir.1994).

The three published opinions upon which the dissent relies, see dissenting op. at 488, all present significantly different circumstances and, in our view, simply underscore the difference between the exceptional nature of the problem Nazarova faced and the unexceptional nature of the problems petitioners faced in those cases. *Thomas v. INS* affirmed the BIA's refusal to remand a case to the IJ who entered a deportation order *in absentia* when the petitioner was ten minutes late for his fifth hearing and the IJ had already continued the case four times to allow the petitioner and his attorney numerous opportunities to appear together and present the proper documentation. 976 F.2d 786, 787–88 (1st Cir.1992). We would agree with the First Circuit that the BIA acted neither arbitrarily nor capriciously in that case, and

that the petitioner there had ample, meaningful opportunities to be heard. Nor are we persuaded by the dissent's comparison between Nazarova's dilemma and the mundane car troubles rightly rejected in other cases as unexceptional circumstances. *de Morales v. INS*, 116 F.3d 145 (5th Cir. 1997) (car breakdown not an exceptional circumstance when petitioners took a ride home rather than to the courthouse and failed to explain their absence until after receipt of the resulting deportation order); *Sharma v. INS*, 89 F.3d 545 (9th Cir.1996) (arriving an hour late due to heavy traffic and trouble parking not an exceptional circumstance). We will not discuss the unpublished opinions upon which the dissent relies because they have no precedential value. See 7th Cir. R. 53.

 Yet even if the dissent is correct and Nazarova's situation does not qualify as an exceptional circumstance, the course of events here conspired to deprive her of the meaningful opportunity to be heard that the Due Process Clause guarantees. This too is enough to require the BIA to reopen the proceedings. *Cf. State Farm Ins. Co. v. Kazakova*, 299 Ill.App.3d 1028, 234 Ill.Dec. 88, 702 N.E.2d 254 (1998) (reversing lower court's decision to sanction a monolingual Russian speaker for supposedly failing to participate in a meaningful manner and violating a notice to appear when she did not bring a Russian-language interpreter to an arbitration hearing).

When her interpreter failed to appear on time, Nazarova faced a serious problem to which there was simply no good solution. On the one hand, she could appear alone at the merits hearing. Given the erroneous information she had received that an interpreter would be present at the scheduling hearing, and her resulting experience of that hearing as incomprehensible gibberish, she held the very reasonable belief that her physical presence alone would do nothing to secure an opportunity to participate meaningfully in the proceedings. Alternatively, she could wait for her interpreter and hope that she would still be allowed the opportunity to state her case even if she arrived late. Although the latter was surely the better of the two choices from her perspective, the IJ and the BIA have formalistically demanded that Nazarova suffer the consequences of her failure to appear. (We pause to note with disfavor their refusal to distinguish between a failure to appear at all and a failure to appear at exactly the appointed hour. We question whether this is the sort of "failure to appear" envisioned by the statute and doubt that Congress intended such a punitive response to a brief and reasonable delay. See *Romani v. INS*, 146 F.3d 737, 739 (9th Cir.1998).) Nazarova promptly notified the IJ of the reason why she was late in a handwritten motion to reopen dated October 7, 1994, the very same day, at 12:24 p.m., only minutes after she found out what had happened. We cannot endorse the approach of the IJ and the BIA to this case. The INS sent hopelessly confusing signals to Nazarova about the most fundamental aspect of her hearing: whether she would be able to understand any of the words she heard, and whether the IJ would be able— quite literally—to comprehend her presentation. It violates due process to insist that Nazarova should have sacrificed her constitutional right to a meaningful opportunity to be heard so that she could stand corporeal witness—though in essence unable to hear or speak—to her own deportation.

Accordingly, we GRANT the petition for review, VACATE the deportation order, and REMAND the case for further proceedings consistent with this opinion.

MANION, Circuit Judge, dissenting.

In reversing, the court concludes that Nazarova was denied a meaningful opportunity to be heard and that her absence should be excused due to exceptional circumstances. We lack jurisdiction over these arguments because they were not made to the BIA. Nazarova renews the argument that she made before the BIA—

that she did not receive adequate notice because the consequences of her absence were not explained to her. As the court notes, Nazarova did receive adequate notice. And even if we had jurisdiction to address the other issues, neither merits a reversal, so I respectfully dissent.

Under the prior (and now amended) statutory scheme, which applies to this case, our review of deportation orders entered *in absentia* was more limited than our review of other deportation orders. An alien deported *in absentia* could move to reopen her case only on two grounds: that she did not receive the statutorily mandated notice, 8 U.S.C. § 1252b(c)(3)(B); or that her absence was caused by "exceptional circumstances," 8 U.S.C. § 1252b(c)(3)(A). "Exceptional circumstances" are circumstances beyond the control of the alien "such as serious illness of the alien or death of an immediate relative, but not including less compelling circumstances." 8 U.S.C. § 1252b(f)(2). Where the BIA denies such a motion to reopen, this court's review of that decision is limited to: (1) whether the alien received valid notice; (2) the reasons why the alien was absent from her hearing; and (3) whether clear, convincing, and unequivocal evidence of deportability was established. 8 U.S.C. § 1252b(c)(4).

In her petition to this court, Nazarova argues, as she did to the BIA, that she did not receive adequate notice because the consequences of her absence were not explained to her. She relates several deficiencies to support her claim: she was misled as to the availability of interpreters at the master calendar hearing; no one spoke to her in her language of the availability of an interpreter; and no one explained to her in her language the consequences of her being late. Thus, she claims she did not receive valid notice and therefore could not be deported *in absentia*.[1] The court characterizes Nazarova's argument as her being entitled to a notice written in her native language, and correctly concludes that such an argument must fail. Opn. at 483. But Nazarova's argument goes beyond the language barrier. Before the BIA, Nazarova argued that she was provided inadequate notice of the consequences of her failure to appear on time and so she was denied due process. She makes the same argument here, asserting that under the "unique circumstances" of her case, the BIA's refusal to reopen her hearing was a denial of due process. The "factual" basis of her argument is that the INS's failure to provide her an interpreter at the master calendar hearing made her afraid to appear at subsequent hearings without her own interpreter lest she fail to understand, and that she did not understand that she would be deported if she did not appear on time because the IJ failed to explain this to her.[2]

---

1. The INS argues that Nazarova has failed to raise any of the grounds permitted in a petition for review to this court, but her argument falls squarely within the first ground: she is challenging the validity of the notice she received.

2. Nazarova frames her due process argument as:

> [U]nder the unique facts of her case—where she appeared two hours late to her hearing with the explanation that [she] was misled about the availability of interpreters and felt that she could not risk appearing without one—her due process rights were violated by the Board's failure to reopen her case to provide her an opportunity to be heard. The Board should have taken into consider-

ation the fact that she was late only because she believed it was crucial to her ability to be present and heard that she bring her own interpreter—and that she reached that belief because no notice regarding interpreters had been given to her other than the mis-information that an interpreter would be provided at the initial Master Calendar hearing.

Pet. Brief p. 24. She also states her argument as:

> The additional procedural protection [Nazarova] requests—that the Board forgive her two hours' tardiness caused by the failure of the Immigration Judge to provide an interpreter—is so minimal and at no cost to the government that the failure to provide that relief should be held a violation of due process.

Pet. Brief p. 25.

The BIA correctly concluded that Nazarova had actual notice that she could be deported *in absentia* if she failed to appear for her deportation hearing. Written notice was provided to Nazarova in English, and, as the court correctly concludes, notice in English to a non-English speaker is adequate because a reasonable person would obtain the services of translator to inform her of what the notice contained. If Nazarova ignored this obligation, she would be in no better position to complain about the adequacy of the notice than one who, although he could read English, threw the notice away without looking at it. In either case, actual notice has been given. And in Nazarova's case, she did procure the services of an interpreter. Thus, the entire factual basis of Nazarova's argument is false. She in fact knew the consequences of her absence; the alleged misinformation regarding the presence of an interpreter at the master calendar hearing did nothing to change this. Nazarova's problem was not that she had no notice of the consequences of her tardiness, but that in the face of that notice she chose to wait for her interpreter. Thus, I agree with the BIA that Nazarova's argument must fail.

The court interprets Nazarova's argument to be that although she received notice, she was denied a meaningful opportunity to be heard. Opn. at 484. The court seems to recognize that this argument was not made to the BIA. Opn. at 482. While the court is correct that in some contexts we have the power to hear arguments forfeited below, opn. at 481–82, we cannot address arguments that were not presented to the BIA. An alien must exhaust her administrative remedies before seeking judicial review, 8 U.S.C. § 1105a(c), and we have no jurisdiction to review unexhausted arguments, *Perez–Rodriguez v. INS*, 3 F.3d 1074, 1080 (7th Cir.1993). Generally, an alien need not exhaust due process claims before the BIA, but must do so where the alleged errors are—like Nazarova's—procedural and can be corrected by the BIA. *Castaneda–Suarez v. INS*, 993

F.2d 142, 144 (7th Cir.1993). Moreover, even if we had jurisdiction to hear this argument, I conclude that it too would fail.

The court concludes that "the course of events here conspired to deprive [Nazarova] of the meaningful opportunity to be heard that the due process clause guarantees." Opn. at 485. Discussing whether the "course of events" deprived Nazarova of her opportunity to be heard misses the point. The statutory scheme that governed Nazarova's hearing provided her with due process. The statute required that Nazarova be given notice of the time of the hearing and the consequences of her absence; that was done here. This notice satisfied due process even though it was not in Russian. And the statute provided Nazarova with a meaningful opportunity to be heard because it required a hearing at which the INS had the burden to present evidence of her deportability and at which she would be permitted to cross-examine the witnesses and present her own evidence. Nazarova was not heard—meaningfully or otherwise—because she did not attend that hearing. Her absence was caused by her decision to sit and wait when her interpreter was late, even though she had notice that doing so might result in her deportation *in absentia*. Nothing the INS did forced her to make that choice.

The court concludes that the interpreter's tardiness put Nazarova on the "horns of a dilemma." The court supposes that Nazarova had only two choices: either proceed to the hearing without the interpreter and participate in a hearing she could not comprehend, or wait for him and risk being deported *in absentia*. But this presumes a false dichotomy. Nothing precluded Nazarova from attempting to contact the IJ to explain her delay, and while she certainly would have had to do this with the assistance of someone else, she had already used the help of Ms. Aizenberg to contact the court. And had Naza-

rova gone to the hearing, there is no reason to conclude she would have been forced to stand mute and uncomprehending while the proceeding took place around her. First, we do not know whether the INS would have provided a Russian interpreter at the hearing. Second, we do not know what the IJ would have done had Nazarova presented herself on time but conveyed that her interpreter was late or, if conveying that was beyond her abilities, simply conveyed that she could not understand. (Nazarova apparently understood enough English so that at her first hearing she was able to provide her name, birth date, and place of birth.) Even if Nazarova had been completely unable to understand English, her being at the hearing and speaking only Russian would have more than adequately conveyed to the IJ what her problem was. We have held that it is within the IJ's discretion to determine whether an alien requires an interpreter. *Drobny v. INS*, 947 F.2d 241, 244 (7th Cir.1991). There is no reason to suppose that the IJ would not have properly exercised his discretion when presented with an alien who could speak only Russian. And a review of what he did or did not do in that circumstance would be for abuse of discretion.

The court should not blame Nazarova's absence on the INS's misinformation regarding the interpreter at the master calendar hearing. Although it was clear to Nazarova that she had gotten incorrect information about the first hearing, she did not attempt—through Ms. Aizenberg or the interpreter that she hired—to clarify the misunderstanding, that is, to inquire whether an interpreter would be at the deportation hearing, or what could be done to arrange for one to be provided by the INS. A single instance of misinformation does not instill in a reasonable person the notion that the INS will never provide accurate information. The inevitable fact is that Nazarova was late to her hearing because she employed an unreliable interpreter and when she discovered he was late made the bad choice of waiting for

him. There is nothing "unique" about those circumstances. In fact equally sympathetic cases are often addressed by the courts of appeal.

In *Thomas v. INS*, 976 F.2d 786 (1st Cir.1992), the alien was deported *in absentia* when he arrived 10 minutes after the hearing was ended because he and his attorney had "crossed signals" regarding their meeting place. The First Circuit concluded there was no abuse of discretion in refusing to reopen the proceedings. 976 F.2d at 790. In *Sharma v. INS*, 89 F.3d 545 (9th Cir.1996), the aliens were 45 minutes to an hour late for their hearing due to traffic congestion and parking problems. The Ninth Circuit held that the refusal to reopen their proceedings was not an abuse of discretion nor did that refusal violate due process. 89 F.3d at 548. In *de Morales v. INS*, 116 F.3d 145 (5th Cir.1997), the aliens never appeared at their hearing because their car broke down on the way. The Fifth Circuit held the refusal to reopen their case was not an abuse of discretion. 116 F.3d at 148–49. And cases as sympathetic as Nazarova's are routinely affirmed as unpublished orders. *See, e.g., Cetino v. INS*, 142 F.3d 442 (9th Cir. 1998) (no abuse of discretion to not reopen where alien missed hearing to care for her son); *Gil–Garibay v. INS*, 165 F.3d 915 (9th Cir. 1998) (no abuse of discretion to not reopen when alien was ill on morning of hearing); *Soniregun v. INS*, 165 F.3d 19 (4th Cir. 1998) (no abuse of discretion to not reopen where counsel sent notice of hearing to wrong apartment); *Simon v. INS*, 139 F.3d 908 (9th Cir. 1998) (no abuse of discretion to not reopen where absence caused by counsel's mix-up about date of hearing); *Zeron v. INS*, 129 F.3d 129 (9th Cir. 1998) (no abuse of discretion to not reopen where alien missed hearing due to drowsiness caused by prescription medicine).

In addition to resolving the due process argument, the court raises a second issue *sua sponte*. It addresses the issue of

whether Nazarova had shown "exceptional circumstances" that would excuse her absence. Nazarova raised this issue in her initial motion to reopen her case, but the IJ concluded that the facts she alleged did not meet the statutory definition. Nazarova never appealed this conclusion to the BIA, nor did she raise this issue in her second motion to reopen. We could conclude that Nazarova failed to exhaust her administrative remedies regarding this issue and that, as noted above, we are without jurisdiction to address it. But the BIA did address this issue *sua sponte*, so it was exhausted to the extent it could be. But Nazarova has not raised the issue in this court. Therefore this court need not address this issue, but even if properly raised the argument should fail.

The judiciary certainly can determine whether Congress intended statutory language to have a particular meaning. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 445–46, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (deciding whether Congress intended two different statutory phrases to have same meaning). But where Congress has delegated to the BIA the application of ambiguous statutory language on a case-by-case basis, we owe the BIA's interpretations deference. *Id.* at 448, 107 S.Ct. 1207 (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). The open-ended definition of "exceptional circumstances" is a paradigm example of such ambiguous language. Thus, it is only logical that we review the BIA's conclusion for an abuse of discretion. *Groza v. INS*, 30 F.3d 814, 818 (7th Cir.1994). The court today does not explain why the BIA abused its discretion when it concluded Nazarova's situation did not meet the definition of "exceptional circumstances." Opn. at 484. Nazarova's circumstances are no more exceptional than the great number of petitioners who present a sympathetic explanation, and whose motions to reopen are routinely denied and equally routinely affirmed in the courts of appeal. Not only is there no abuse of discretion on

these facts, but Nazarova herself does not assert that she satisfied the statutory requirements.

I would affirm.