**Valentin A. TZAREVSKI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 01–1222.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 2001.

Decided Nov. 27, 2002.

Before COFFEY, ROVNER, and EVANS, Circuit Judges.

ORDER

After Valentin Tzarevski, a native and citizen of Bulgaria, missed his deportation hearing, an immigration judge ordered him deported in absentia. Tzarevski then moved to rescind the order and reopen the proceedings, contending that information provided by the government misled him to think that he did not need to attend the hearing. Both the immigration judge and the board of immigration appeals concluded that the circumstances faced by Tzarevski were not "exceptional," and thus did not warrant relief. Although our review of the agency's decision is deferential, we conclude that the petition should be granted because the information provided by the government, coupled with other unusu-

al circumstances faced by Tzarevski, make this an exceptional case.

Tzarevski entered the United States in 1993 as a visitor for pleasure and promptly applied for asylum because he feared persecution by the ruling communist party in Bulgaria. The INS denied Tzarevski's asylum application on August 22, 1994, and that same day ordered him to show cause why he should not be deported for remaining in the United States without authorization. The show-cause order, issued from the asylum office in Chicago, Illinois, directed Tzarevski to appear for a hearing before an immigration judge on December 2. In a letter accompanying the order, the INS advised Tzarevski that he could renew his asylum request during deportation proceedings.

Tzarevski says that he intended to attend the hearing, but two months before the scheduled date, he received another letter from the government related to his immigration status. This letter, sent from the National Visa Center, informed Tzarevski that he had been randomly selected to apply during the 1995 fiscal year for a "diversity visa." Diversity visas are made available as part of the diversity visa lottery program, which seeks to encourage immigration to the United States from countries with historically low immigration rates. *See* 8 U.S.C. § 1153(c). Along with the letter, the National Visa Center sent Tzarevski a notice that began. "CONGRATULATIONS! You are among those randomly selected in the lottery and registered in the DV–1 immigrant visa program for the fiscal year 1995." The notice then explained that Tzarevski needed to "initiate processing" of his case by submitting registration materials to the National Visa Center—which he did. Then, Tzarevski either could complete the application process through a consular office, or he could process his application through the INS.

Elaborating on the latter alternative, the notice explained, "If you are physically present in the United States, you may apply to the [INS] for adjustment of status provided you are otherwise eligible." Another document, captioned *"IMPORTANT NOTICE,"* repeated this instruction, explaining that applicants living in the United States who wish to adjust their status should "contact INS directly."

After receiving these materials, Tzarevski proceeded to the Chicago district office of the INS. There, according to Tzarevski, an immigration officer provided him with an adjustment-of-status application and instructed him to return the completed forms to the second floor of the Chicago office. But Tzarevski technically could not adjust his status by filing an application directly with the INS. Because he was already in deportation proceedings, he needed to present his adjustment-of-status application to the immigration judge at his December 2 hearing. *See* 8 C.F.R. § 245.2(a)(1) (explaining that aliens who are in deportation proceedings can apply to adjust their status "only in those proceedings"). Nevertheless, when Tzarevski returned his completed application to the INS's Chicago office, no one informed him that he needed to present the application to the immigration judge. The INS instead accepted the application and scheduled Tzarevski for an interview at the district office several months later. According to Tzarevski, he thought that this interview would be his next interaction with immigration officials, so he did not attend his December 2 hearing. Because Tzarevski did not appear, the immigration judge conducted proceedings in absentia and ordered that Tzarevski be deported to Bulgaria.

Tzarevski learned of the in absentia order only when he went to the district office for his scheduled interview in March 1995.

Tzarevski was not interviewed, however; immigration officials instead arrested him on the authority of the in absentia order. Tzarevski then for the first time consulted an attorney and, within ten days of his arrest, filed a motion to rescind the deportation order and reopen the proceedings. Tzarevski explained in the motion that he did not go to his hearing because he thought that the hearing concerned his asylum application: had he known that he needed to apply to adjust his status with the immigration judge, he would have done so.

The immigration judge denied the motion, and Tzarevski appealed to the board of immigration appeals, requesting that the board expedite his case since he would not be eligible for a 1995 diversity visa after the close of the fiscal year. But the board did not consider the case during the fiscal year. Indeed, the board did not consider the case for another five years, and in the meantime Tzarevski again became eligible for a diversity visa—this time for the 2000 fiscal year. As he had done in 1995, Tzarevski requested expedited consideration, but again the board waited until Tzarevski's eligibility expired, finally rendering a decision in December 2000. The board upheld the immigration judge's decision, concluding that "exceptional circumstances" had not prevented Tzarevski from attending the December 2 hearing and that "there is no evidence in the record to establish that a [diversity] visa is currently available for the respondent." The board did not mention that Tzarevski had been eligible to apply for a diversity visa—twice—during the pendency of his appeal.

We review the denial of a motion to reopen an in absentia deportation order for abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323–24, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992); *Ursachi v. INS*, 296 F.3d 592, 594 (7th Cir.2002). The parties agree that the case is governed by § 242B of the Immigration and Nationality Act, one of the many provisions repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See* IIRIRA § 308(b)(6); *Socop–Gonzalez v. INS*, 272 F.3d 1176, 1187 n. 9 (9th Cir.2001). Under § 242B our review is confined to "the issues of the validity of the notice provided to the alien, to the reasons for the alien's not attending the proceeding, and to whether or not clear, convincing, and unequivocal evidence of deportability has been established." INA § 242B(c)(4); *Ursachi*, 296 F.3d at 595. Tzarevski does not argue in his petition that he received improper notice of his hearing before the immigration judge or that the INS failed to present evidence of his deportability. His principal contentions focus instead on the reasons that he did not attend the December 2 hearing.

Section 242B provides that a deportation order entered in absentia may be rescinded for several reasons. Recision is warranted, for example, where the government provided improper notice of the proceedings, the alien was in custody, or "exceptional circumstances" caused the nonappearance. INA § 242B(c)(3). The statute defines exceptional circumstances as circumstances that are "beyond the control of the alien," such as the "serious illness of the alien or death of an immediate relative," but not "less compelling circumstances." *Id.* § 242B(f)(2). According to Tzarevski, his case is exceptional because improper actions by the government caused him to miss his hearing. First, Tzarevski observes, both the National Visa Center and the immigration official who provided him with an adjustment-of-status application erroneously suggested that he could adjust his status through the INS, when he actually needed to apply directly to the immigration judge. Then,

when he took the advice, the INS improperly accepted his application and scheduled him for an interview. Were it not for this combination of errors, Tzarevski argues, he never would have ·missed his hearing.

We agree that these circumstances are exceptional. As Tzarevski points out, his situation resembles that faced by the petitioner in *Nazarova v. INS*, 171 F.3d 478 (7th Cir.1999)—a case in which we held that exceptional circumstances existed on account of misleading information provided by the government. In *Nazarova* the petitioner was advised by a friend, who had spoken to someone at the immigration court, that an interpreter would be available during deportation proceedings. At a preliminary hearing, however, there was no one to translate for the petitioner, so she hired her own interpreter, who was two hours late for the next hearing. Rather than appear on time, the petitioner chose to wait for the interpreter, and a deportation order was entered in her absence. We concluded that the board abused its discretion by upholding the order because the government's "confusing and contradictory actions" triggered a series of events that caused the petitioner's tardiness. *Id.* at 484. Tzarevski's case is no different. Tzarevski would not have missed his hearing if at any step of the way the National Visa Center had given him accurate instructions, the immigration official at the district office had not told him to return his adjustment-of-status application to that office, or the INS had refused to accept the application. As in *Nazarova*, but for the government's improper actions, no harm would have occurred.

The board of immigration appeals upheld the deportation order, despite our decision in *Nazarova*, on the theory that Tzarevski had failed to show that he missed his hearing due to circumstances "beyond his control." As the board explained, "respondent was fully aware of his December 2, 1994, hearing date and chose to abandon his asylum claim." But the board's brief analysis—which the INS defends—is unsound for two reasons. First, the explanation fails to consider *why* Tzarevski abandoned his asylum claim. According to Tzarevski's affidavit, which is uncontradicted, Tzarevski abandoned the claim only because the government led him to think that he could become a lawful permanent resident without going to the hearing. Second, the board's analysis is not consistent with our decision in *Nazarova*. The government had no obligation here to provide legal advice to Tzarevski. *See Dimenski v. INS*, 275 F.3d 574, 578 (7th Cir.2001). But *Nazarova* makes clear that once the government gave advice Tzarevski certainly was not responsible for the accuracy of the information: whether Tzarevski received proper directions thus was "beyond [his] control." *See* 171 F.3d at 484.

The INS responds to Tzarevski's petition with another argument. The agency contends that Tzarevski had no right to accurate instructions from the immigration officer at the Chicago district office, nor could he expect the office to reject his adjustment-of-status application as improperly filed. But the regulation governing oral communications with offices of the INS provides that "[i]f the office receiving the communication does not have jurisdiction to handle the matter," then the person seeking information from the agency "will be advised how to proceed." 8 C.F.R. § 100.3. In addition, INS operations instructions provide that adjustment-of-status applicants shall not be scheduled for an interview unless the applicants establish prima facie eligibility for relief. INS Operations Instructions § 245.2(a).

The INS does not argue that it complied with these rules when the immigration officer advised Tzarevski to return his completed application to the Chicago district office or when the office later accepted the application. The agency acknowledges that administrative agencies must follow their own regulations, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Asani v. INS*, 154 F.3d 719, 729 (7th Cir. 1998); *Nelson v. INS*, 232 F.3d 258, 262 (1st Cir.2000), but argues that these provisions merely guide INS employees and thus do not create enforceable rights, *see Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1511 (11th Cir.1992); *Perales v. Casillas*, 903 F.2d 1043, 1051 (5th Cir. 1990). Yet even if the INS is correct, the agency misunderstands Tzarevski's argument. Tzarevski has not sued to enforce a right created by either the regulation or the operations instruction. Rather he invokes the regulation and operations instruction to illustrate how the INS has failed here to follow its own rules. That failure, together with the confusing sequence of misinformation from the government, has led to circumstances that can be characterized only as exceptional.

The petition for review is GRANTED, the deportation order is VACATED, and the case is REMANDED for proceedings consistent with this order.