**Florina AVILA, Petitioner,**

v.

**John D. ASHCROFT, Respondent.**

**No. 02–3244.**

United States Court of Appeals, Seventh Circuit.

Argued July 9, 2003.

Decided Oct. 30, 2003.

John P. Quall, Chicago, IL, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, Russell Verby, Department of Justice, Washington, DC, for Respondent.

Before BAUER, COFFEY, and MANION, Circuit Judges.

### ORDER

Due process requires that deportable aliens be given notice of their removal hearings. Under the current provisions of the Immigration and Nationality Act, 8 U.S.C. § 1229(a)(1), the government may give such notice through the mail, but the Act does not specify how the government may obtain the alien's address. The petitioner in this case, Florina Avila, claims that the means by which the government obtained her address were improper, and therefore asks us to vacate her deportation order. For the reasons given below, we deny her petition.

Ms. Avila entered the United States from Mexico without inspection in 1986. She has lived at various places in the Chicago area, but since 1993 has used her brother's house at 1211 Fulton Avenue in Waukegan, IL as her permanent mailing address.

In March 1999, a man named Antonio Perez told Ms. Avila that he could arrange for her to receive work authorization. It turned out that Mr. Perez was lying about this, and he would eventually be charged with immigration fraud and deceptive practices by the City of Chicago's Department of Consumer Services. But not knowing this, Ms. Avila accepted his offer, paying his fee and giving him her personal information. Mr. Perez then filed an Application to Register Permanent Residence or Adjust Status on Ms. Avila's behalf,

listing "1211 Fulton Ave." as her address. Despite the application's deficiencies—it was unsigned, and it failed to disclose Mr. Perez as its preparer—it was accepted, processed, and denied by the Immigration and Naturalization Service.[1] Ms. Avila did not receive notice of the denial, apparently because the letter was misdirected to "121 Fulton Avenue."

Through this application, the INS learned that Ms. Avila was in this country without authorization. It therefore initiated the procedures used to notify an alien of deportation proceedings. First, on July 18, 2000, it sent a Notice to Appear to 1211 Fulton Avenue, which explained that a hearing would soon be scheduled. This was followed two months later by a Notice of Hearing, mailed to the same address, announcing the hearing date of July 3, 2001, and explaining that if Ms. Avila failed to appear, the hearing could be held in her absence and could result in an order of removal.

Ms. Avila claims that she did not receive either of these notices. In an affidavit supporting her motion to reopen the proceedings, she tells how she first found out about the hearing:

> The first time I knew about any proceedings against me was the letter that said I have to leave on September 18, 2001. My sister-in-law received it and signed for it. Then, she discovered that there was a previous letter for me, a copy of the order entered against me on July 3, 2001. She has several teenage children and they apparently never told her about that letter, merely placing it in a pile in the kitchen.

She goes on to state that she "never received any notice to appear at the July 3, 2001 hearing." The record does not indicate whether the Notice to Appear or the Notice of Hearing was ever delivered, though there is evidence that they were mailed out by the INS.

When Ms. Avila failed to appear at the hearing, she was ordered removed *in absentia*. After moving unsuccessfully to reopen the proceedings, she appealed to the Board of Immigration Appeals. The BIA concluded that the Notice to Appear and the Notice of Hearing had been sent to the correct mailing address, and that Ms. Avila was properly charged with receipt of the notices. It therefore dismissed the appeal.

Our jurisdiction to review orders of removal arises under 8 U.S.C. § 1252. With respect to orders issued *in absentia* for failure to appear at a hearing, 8 U.S.C. § 1229a(b)(5)(D) confines petitions for review to "(i) the validity of the notice provided to the alien, (ii) the reasons for the alien's not attending the proceeding, and (iii) whether or not the alien is removable," only the first of which is at issue in this case. The BIA's decision to grant or deny a motion to reopen is discretionary, 8 C.F.R. § 1003.2(a), and is reviewed for abuse of discretion, *Awad v. Ashcroft*, 328 F.3d 336, 341 (7th Cir.2003).

Ms. Avila makes three arguments. She first suggests that the INS violated due process by sending the Notice to Appear and the Notice of Hearing to an address that had not been provided by Ms. Avila personally, but that had been conveyed to the INS by Mr. Perez acting in a fraudulent capacity. It is unclear, however, how this violated due process, especially as Mr. Perez was acting with Ms. Avila's knowledge and permission. We have explained that due process "requires notice reasonably calculated to provide actual notice of

---

1. On March 1, 2003, the INS ceased to exist as an independent agency within the United States Department of Justice, and its functions were transferred to the newly-formed Department of Homeland Security. *See* 79 Interpreter Releases 1777, 1777 (2002). The transition is irrelevant for our purposes.

the proceedings." *Nazarova v. INS,* 171 F.3d 478, 482 (7th Cir.1999). The INS appears to have provided such notice in this case, despite the fraudulent behavior of Mr. Perez.

Ms. Avila's second argument is based on the address-reporting requirement of the Immigration and Nationality Act. Under the Act, when an alien is notified of proceedings against her, she is required to provide the government with a current address and telephone number at which she may be contacted. 8 U.S.C. § 1229(a)(1)(F). If the alien fails to do so, she waives the right to be notified of the time and place of her removal hearing. 8 U.S.C. § 1229a(b)(5)(B). Notice of this requirement is included in the standard Notice to Appear.

According to the recent BIA opinion of *In re G–Y–R–,* 23 I. & N. Dec. 181 (B.I.A. 2001), if the Notice to Appear does not reach an alien because it is sent to an incorrect address, the alien's obligation to report her current address does not accrue and she cannot be charged with receipt of any future mailings to that address. *In re G–Y–R–* at 187. Ms. Avila argues that because she never received her Notice to Appear, her own obligation under 8 U.S.C. § 1229(a)(1)(F) to provide a current address never accrued.

However, in *In re G–Y–R–* the Notice to Appear was sent by certified mail to an address taken from an asylum application filled out six years earlier. G–Y–Rno longer lived at that address, and the notice was returned to the INS unopened and undelivered. *See In re G–Y–R–* at 182. In contrast, the Notice to Appear in this case was mailed to what Ms. Avila acknowledges is her current and permanent mailing address, though one at which she does not personally reside. *In re G–Y–R–* explains that "[i]f ... the Notice to Appear reaches the correct address but does not reach the alien through some failure in the internal workings of the household, the alien can be charged with receiving proper notice, and proper service will have been effected." *In re G–Y–R–* at 189. Although the record does not indicate whether the pre-hearing notices were in fact delivered, it is ... proper to presume that postal officers properly discharge their duties," *Salta v. INS,* 314 F.3d 1076, 1079 (9th Cir.2002), and Ms. Avila has not put forth any argument challenging that presumption. The BIA therefore did not abuse its discretion in charging Ms. Avila with receipt of the pre-hearing notices.

Ms. Avila's third and final argument is more difficult to understand. She asserts that the BIA failed to provide her with a copy of the Record of Proceedings while her administrative appeal was pending. She claims that the Record confirms "that she never provided an address to the INS, but was defrauded into giving her address to a criminal." She does not explain, however, how the BIA's alleged failure to provide her with a copy of the Record prejudiced the outcome of her administrative appeal, nor does she cite any authority to support her claim that such failure constituted an abuse of discretion.

Although she insists that she did not personally receive them, Ms. Avila does not dispute that the Notice to Appear and the Notice of Hearing were both sent to her correct mailing address. This comports both with the statutory requirements of the Immigration and Nationality Act, as interpreted by the BIA in *In re G–Y–R–,* and the requirements of due process, as explained by this court in *Nazarova.* Ms. Avila's petition for review is therefore

DENIED.