In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-2718

GHULAM MURTUZA,[1]

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals
No. A76-770-612

ARGUED SEPTEMBER 7, 2005—DECIDED OCTOBER 28, 2005

Before BAUER, POSNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* When "Ghulam Murtaza" failed to appear at a removal hearing scheduled in his honor, the hearing went forward without him. It concluded with a finding by an immigration judge that Murtaza's removability was established by clear and convincing

---

[1] The petitioner's name is actually "Murtaza," but the name was misspelled on the adjustment application from which this case arose.

evidence. Upon that finding, Murtaza was ordered removed, *in absentia*, to Pakistan, his country of origin. This procedure was fair and square *if* Murtaza had notice that his fate was going to be decided at the hearing. Arguing that he did not have notice, Murtaza sought reopening of the removal order (and reconsideration of the subsequent order denying reopening). Ultimately, the Board of Immigration Appeals denied Murtaza's request to rescind the removal order. That decision precipitated this appeal to us.

These are the facts as Murtaza tells them. He arrived in New York in October 1997 as a nonimmigrant visitor from Pakistan, but was soon drawn to Chicago by rumors of an "amnesty settlement" through which he believed he could obtain legal residency. In Chicago he met a man who offered to help him benefit from the purported settlement. He gave the man his personal information, paid him a fee of $3,000, and, unfortunately, never heard from him again. Realizing he had been duped, Murtaza returned to New York.

The swindler may have disappeared, but not without a trace. On January 14, 1998, the day before Murtaza says he left Chicago, the government received an application for status adjustment bearing Murtaza's signature and containing Murtaza's personal information (his birth date, his parents' names, the date of his arrival, etc.). The application was poorly prepared—it misspelled the applicant's name twice, identified no basis for adjustment, and didn't even indicate who prepared it. It was ultimately denied. As a follow-up, the government issued a notice to appear charging the man named in the application with overstaying his visa (which allowed him to be in the country for no longer than 6 months). The notice was sent to the address given in the application, "4930 North Albany" in Chicago, and a hearing was scheduled for August 29, 2001. As we said, Murtaza did not appear, and the immigration judge ordered, *in absentia*, his removal to Pakistan.

Murtaza says he didn't know about the removal order until a year and a half later when, after moving back to Chicago for an arranged marriage (an interesting point, but we shall not get into it), he appeared for "special registration," a post-911 program requiring noncitizens from specified countries to register with the National Security Entry-Exit Registration System, *see* Registration and Monitoring of Certain Nonimmigrants, 67 Fed. Reg. 52584 (Aug. 12, 2002); 8 C.F.R. § 264.1(f); *Faruqi v. Dep't of Homeland Security*, 360 F.3d 985, 987 (9th Cir. 2004). The officer who conducted the registration told Murtaza he had been ordered deported, and pursuant to the order, Murtaza was taken into custody. After being released from custody on bond, Murtaza asked the IJ to reopen the removal proceedings, alleging lack of notice. The government opposed the request, arguing that notice was properly sent to the address given in the adjustment application. Murtaza denied having provided that address—he suggested that the man who swindled him must have filed the application on someone else's behalf, appropriating Murtaza's name and information to obscure unsavory elements in the real applicant's background—and argued that he should not be charged with receiving the notice sent to that address.

The IJ (Robert D. Vinikoor) acknowledged that reopening would be appropriate if Murtaza could show that he did not receive notice of the hearing. *See* Immigration and Nationality Act § 240(b)(5)(C), 8 U.S.C. § 1229a(b)(5)(C); *Sabir v. Gonzales*, 421 F.3d 456, 458 (7th Cir. 2005). For various reasons, however, the judge did not believe his story. For example, although Murtaza denied involvement with the January 1998 adjustment application, the signature it bore was "remarkably similar if not identical" to the signature on Murtaza's affidavit, and the information it contained about Murtaza's background was otherwise accurate. The judge also questioned Murtaza's denial that he ever lived at 4930 North Albany, observing that when Murtaza moved back to

Chicago, it was to an address only a block away—4828 North Albany. And although Murtaza insisted that he was originally in Chicago for only a week before returning to New York, the judge found no evidence substantiating that claim. In the end, the judge was not convinced that someone else had filed the application using Murtaza's name and information. He therefore concluded that Murtaza had provided the address to which the notice was sent and, absent any evidence that the notice was not delivered to that address, Murtaza could properly be charged with receiving the notice. *See Matter of M-D-*, 23 I. & N. Dec. 540, 544-45 (BIA 2002); *Matter of G-Y-R-*, 23 I. & N. Dec. 181, 189 (BIA 2001) (an alien can be charged with receiving notice if it was delivered to the correct address even if the alien did not personally see it). The Board of Immigration Appeals, as we have said, affirmed the IJ's order.

Trying now to persuade us that the IJ got it wrong, Murtaza points to various pieces of evidence he says support his account of identity theft. For example, whoever signed the adjustment application did so using Murtaza's full name, but the record shows that Murtaza consistently signs his name, using only the first initial, as "G. Murtaza." Also, whoever prepared the application misspelled Murtaza's name, again suggesting that Murtaza himself had nothing to do with it. Finally, the application apparently included a photograph of the applicant, which Murtaza insists does not look like him. According to Murtaza, this evidence shows that he was not the one who filed the application.

But there are two sides to this tale, and the evidence supporting Murtaza is far from conclusive. If it seems doubtful that Murtaza would misspell his own name, it is equally puzzling why someone intent on stealing his identity would do so. And if Murtaza always signs his name using only his first initial, why wouldn't someone trying to forge his signature do the same? As for the photograph, we

are unable to tell whether it is Murtaza or not. In any event, we find it hard to believe that anyone else would want to use Murtaza's identity on such an application—even if it were successful, the only one who would benefit from that success would be Murtaza himself. This inherent implausibility, combined with the IJ's observations about the similarity of signatures and addresses, leads us to conclude that the IJ did not abuse his discretion in finding that Murtaza did not meet his burden of showing lack of receipt. *See Kay v. Ashcroft*, 387 F.3d 664, 671 (7th Cir. 2004) (denial of a motion to reopen an order of removal entered *in absentia* is reviewed for abuse of discretion). Even though one could argue that this was a close call, it was a call the IJ was, based on the circumstances, entitled to make. We therefore DENY Murtaza's petition for review.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*