**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 6, 2005
Decided January 10, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-1561

| | |
|---|---|
| ARN KETBANG, | On Petition for Review of an Order |
| *Petitioner*, | of the Board of Immigration Appeals |
| | |
| *v.* | No. A79-592-275 |
| | |
| ALBERTO R. GONZALES, | |
| *Respondent*. | |

## O R D E R

In 1993 an immigration judge ("IJ") ordered Arn Ketbang deported *in absentia* after he failed to appear at his deportation hearing. In 2004, Ketbang filed a motion to reopen in which he argued that he did not receive notice to appear at the 1993 hearing. The IJ denied the motion, and the Board of Immigration Appeals ("BIA") summarily affirmed. We deny Ketbang's petition for review.

Ketbang, a citizen of Thailand, obtained a nonimmigrant work visa authorizing him to travel to Ft. Lauderdale, Florida, and on to Guantanamo Bay, Cuba, to work at the United States naval base for a brief period in early 1993. On February 10, 1993, Ketbang arrived at the Detroit Metro Airport on a flight from Tokyo, Japan. While Ketbang waited to board a connecting flight to Chicago, immigration officials asked him why he was traveling there instead of Florida. Ketbang admitted that, despite his visa, he was going to Chicago to live and work.

Ketbang was arrested and personally served that same day with an Order to Show Cause alleging that he procured his visa and entered the United States by fraud or misrepresentation, and was deportable under former 8 U.S.C. § 1251(a)(1)(A) (1988 & Supp. V 1993) (currently codified at 8 U.S.C. § 1227(a)(1)(A)) and 8 U.S.C. § 1182(a)(6)(C)(I). He was released after providing the contact address of "4717 North Winthrop, Chicago, Illinois, 60640," and signing the Order to Show Cause, which warned him of the consequences of failing to appear at future proceedings and advising that he was required to report any address changes to the INS district office in Chicago within five days. Ketbang used a checkbox on a form that accompanied the Order to Show Cause to request a deportation hearing before an IJ. The order explained that notice of his hearing would be "mailed to the address" he provided. A Border Patrol agent signed a Certificate of Translation and Oral Notice—a part of the Order to Show Cause—which represents that the order "was read to the named alien in the English language, which is his/her native language or a language that he/she understands"; Ketbang signed a Certificate of Service on the same page indicating that he was personally served with the order.

Ketbang does not dispute that the immigration court attempted repeatedly, and without success, to provide him notice of his deportation hearing; nor does he dispute that the postal service attempted to deliver the hearing notices to him. On March 10, 1993, the immigration court issued a Notice of Hearing in Deportation Proceedings scheduling Ketbang's hearing for April 1. That notice was sent via certified mail and addressed to Ketbang at "4717 North Winthrop, Chicago, Illinois 60640"; it was eventually returned undelivered. When Ketbang failed to appear at the hearing, a second notice rescheduling the hearing for June 10 was sent to the same address. The postal service returned this notice stamped "Attempted Not Known," and Ketbang again failed to appear. The immigration court then sent a third notice rescheduling the hearing for July 8. Again it was returned stamped "Attempted Not Known," and this time when Ketbang failed to appear the IJ ordered him deported *in absentia*.

At some point after Ketbang's arrest in Detroit, he married a United States citizen with whom he now has a six- or seven-year-old son; the Department of Homeland Security located Ketbang when he applied through his spouse for permanent residency. On May 19, 2004, the Bureau of Citizenship and Immigration Services issued a "bag and baggage" letter directing Ketbang to report for removal on July 20. That action prompted Ketbang to move to reopen the 1993 proceedings on the basis that he never received "actual or constructive" notice of his deportation proceedings and thus was denied due process.

Ketbang submitted an affidavit with his Motion to Reopen in which he avers that he does not speak English "with any fluency," and that his encounter with immigration officials at the Detroit airport was conducted entirely in English with

no Thai interpreter. During this "interview," Ketbang says, a "man in a uniform" informed him that he "would have to attend a deportation hearing in Chicago" and gave him a "paper" that he did not understand because it was printed in English. Ketbang explains in his affidavit that the Chicago address he provided was that of a friend who was gone when he arrived there, and since he did not understand the "paper," neither did he realize that he was responsible for informing the immigration court of his new address. The IJ denied Ketbang's motion to reopen without an evidentiary hearing, reasoning that Ketbang received adequate notice because he was personally served with the Order to Show Cause, which informed him of his responsibility to keep the immigration court apprised of his address. The IJ also rejected Ketbang's claim that he never understood the English-language Order to Show Cause; the IJ explained that Ketbang "signed a Certificate of Translation that states that the [Order to Show Cause] was read to him in English which is a language that he understands."

Ketbang argues on appeal that he was not afforded a reasonable opportunity to appear at his deportation hearing because the INS failed to provide a Thai translation of the Order to Show Cause; he is not "fluent" in English, he says, and thus he did not have notice of his responsibility to inform the INS of any address changes. When the BIA summarily affirms the refusal to reopen a deportation order entered *in absentia*, we review the IJ's decision directly and for abuse of discretion. *Uriostegui v. Gonzales*, 415 F.3d 660, 663 (7th Cir. 2005). But whether an immigration proceeding violated due process is a legal question that we review de novo. *Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir. 1999).

Although the statute on notice in this case has since been repealed, it still governs Ketbang's petition for review because he was ordered deported *in absentia* prior to April 1, 1997. *See* 8 U.S.C. § 1101 n.(2)(a); *Ursachi v. INS*, 296 F.3d 592, 594 n. * (7th Cir. 2002). An *in absentia* deportation order may be rescinded upon a motion filed at any time if the alien demonstrates that he or she did not receive notice of the deportation hearing. 8 U.S.C. § 1252b(c)(3)(B) (1988 & Supp. V 1993) (currently codified at 8 U.S.C. § 1229a(b)(5)(C)). The Immigration and Naturalization Act ("INA") in 1993 required that notice of a deportation hearing be "reasonable under all the circumstances," *see id.* § 1252(b)(1), *repealed by* Illegal Immigration Reform and Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009, and notice satisfies due process if it is sent to the last known address provided by the alien, *see Wijerante v. INS*, 961 F.2d 1344, 1346-47 (7th Cir. 1992). The INA, however, did not require (and does not presently require) notice if the alien fails to provide an address at which he or she can be contacted. 8 U.S.C. § 1252b (a)(1)(F)(i)-(ii), (c)(2) (1988 & Supp. V 1993) (currently codified at 8 U.S.C. § 1229(a)(1)(F)(i)-(ii), (c)). Moreover, the Order to Show Cause did not have to be printed in languages other than English and Spanish. 8 U.S.C. § 1252b(a)(3)(A), *repealed by* Illegal Immigration Reform and Responsibility Act of 1996, Pub. L. No.

104-208, 110 Stat. 3009; *see Nazarova*, 171 F.3d at 483 ("[T]he logical implication is that the INS must maintain a stock of forms translated into literally all the tongues of the human race, and then select the proper one for each potential deportee."); *cf. In re G– Y– R–*, 23 I. & N. Dec. 181, 189 (B.I.A. 2001) (stating that notice requirements do not require that "the alien . . . understand the Notice to Appear").

Ketbang's argument relies entirely on the incorrect assumption that he had a right to receive a Thai translation of the Order to Show Cause. We rejected a similar argument in *Nazarova* and held that due process does not require that notice of a deportation hearing be in any language other than English so long as the notice "would put a reasonable recipient on notice that further inquiry is required." 171 F.3d at 483 (rejecting petitioner's argument that due process required the Order to Show Cause to be printed in Russian). Although Ketbang does not address *Nazarova* directly, he asserts that the Order to Show Cause failed to put him on notice that further inquiry was required because he did not comprehend it. The government responds by repeating the IJ's assertion that Ketbang signed the Certificate of Translation "indicating that he understood English and the contents of the [Order to Show Cause]." However, both the IJ and the government misrepresent the record. Ketbang did not sign the Certificate of Translation; rather, he signed the Certificate of Service, which is located *below* the Certificate of Translation. The Certificate of Translation is merely a representation that the Border Patrol agent read the Order to Show Cause to Ketbang in English, a language he "understands," that is, the certificate *does not* represent that Ketbang *acknowledged* understanding the order.

Even so, Ketbang nonetheless fails to demonstrate that a reasonable person in his position would not have thought to investigate further; he knew that he lied on his visa application, and he knew that he was arrested and subsequently served with the Order to Show Cause because the INS discovered his lie. Moreover, Ketbang even acknowledged in his affidavit (11 years after the fact) that the "man in a uniform" in Detroit told him that he had to "attend a deportation hearing in Chicago"—a clear indication that he would, at the very least, have some sort of contact with INS officials in the future. A reasonable person would have taken prompt action—and not wait 11 years—to find out how and when that next contact would occur. The IJ, therefore, did not abuse his discretion in concluding that Ketbang failed to show that he did not have notice of his responsibility to inform the INS of any address changes. *See Murtuza v. Gonzales*, 427 F.3d 508, 510-11 (7th Cir. 2005); *Nazarova*, 171 F.3d at 483. Proper service of the Order to Show Cause is therefore not an issue, *see In re Grijalva*, 21 I. & N. Dec. 27, 35-36 (B.I.A. 1995), and once Ketbang realized that he would not be residing at "4717 North Winthrop, Chicago, Illinois 60640," it was his duty to inform the INS of that fact. 8 U.S.C. § 1252b(a)(1)(F)(ii) (1988 & Supp. V 1993) (currently codified at 8 U.S.C.

§ 1229(a)(1)(F)(ii)); *see Sabir v. Gonzales*, 421 F.3d 456, 459 (7th Cir. 2005); *Wijeratne*, 961 F.2d at1346-47 (7th Cir. 1992).

The petition for review is accordingly DENIED.