# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 02-3140 & 03-2125

MAUNG ZAR KAY,

*Petitioner*,

v.

JOHN ASHCROFT, United States Attorney General,

*Respondent.*

———————

Petitions for Review of Orders of
the Board of Immigration Appeals.
No. A76 458 656

———————

ARGUED FEBRUARY 17, 2004—DECIDED OCTOBER 29, 2004

———————

Before RIPPLE, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Maung Zar Kay, a Burmese national, born February 4, 1978, fled to the United States in October 1997.[1] He was admitted into this country as a tourist seeking asylum on October 8, 1997. The Board ordered Kay removable *in absentia* on September 9, 1998. Kay sought to reopen the proceedings for substantive consid-

_____

[1] Kay is now married to a Burmese national and they have a United States citizen daughter born March 8, 2003.

eration of his asylum and withholding of removal petition. He also filed a subsequent motion to reopen for consideration of his eligibility for relief under the Convention Against Torture (CAT). The Board denied both motions. We affirm the Board's decision to deny Kay's motion to reopen to seek asylum and withholding of removal because he did not show that his failure to appear was due to exceptional circumstances. However, we reverse the Board's decision to deny Kay's motion to reopen for consideration of his CAT eligibility as the decision lacked a reasoned basis.

## I. BACKGROUND

### A.    Procedural History

After his entry into the United States, Kay submitted an application for asylum and withholding of removal on December 6, 1997 and the matter was referred to an Immigration Judge (IJ) in Chicago, Illinois on March 30, 1998. Kay appeared *pro se* for his first asylum hearing on April 29, 1998. The hearing was rescheduled, due to the IJ's absence, for July 22, 1998. Prior to the rescheduled hearing date, Kay relocated from Chicago to San Francisco, California. On July 14, 1998, the Immigration Court received a correct Change of Address Notice from Kay. Upon receiving the Change of Address Notice, the court issued another notice postponing the scheduled July 22 hearing until September 9, 1998, and stating in the notice that the hearing was to take place in Chicago. Kay, under the mistaken belief that changing his address with the court would change the venue of his asylum hearing, failed to appear in Chicago on September 9 causing the IJ to deny his petition for asylum *in absentia* and order him removable.[2]

---

[2]   Kay did not file a Change of Venue petition, which would have been the proper method to request a change of the location of the

(continued...)

On September 24, 1998, after receiving the *in absentia* order of removal, Kay retained Bruce A. Fodiman as counsel. Counsel filed a timely motion to reopen proceedings on October 9, 1998, which the IJ denied on December 31, 1998. The IJ found that Kay received proper notice of the hearing and that Kay's erroneous belief that a Change of Address Notice would change the location of his asylum did not constitute exceptional circumstances sufficient to reopen the proceedings. 8 U.S.C. § 1229a(b)(5)(C). Kay appealed the IJ's decision to the BIA on January 21, 1999.

On November 7, 2000, during the pendency of Kay's appeal of the IJ's denial of his motion to reopen, counsel filed a separate motion with the BIA, identifying the pleading as a "motion to remand," as opposed to correctly labeling it a motion to reopen, seeking protection under CAT. In support of this motion, counsel attached a copy of one page of Kay's Form I-589 asylum application as well as the 1999 State Department's Country Report on Burma. On July 19, 2002, the BIA denied both of Kay's motions, upholding the IJ's December 31, 1998 denial of Kay's original motion to reopen and finding his November 7, 2000 motion for relief under CAT untimely. As to Kay's original motion to reopen, the BIA agreed with the IJ that Kay had failed to demonstrate "exceptional circumstances" because he was given fair notice of the hearing's time and location and his failure to appear was not due to circumstances beyond his control. Concerning Kay's CAT motion, the Board found that in order to seek protection under CAT, pursuant to 8 C.F.R. § 208.17(a), Kay was required to file his CAT motion to reopen prior to June

---

[2] (...continued)
asylum hearing, 8 C.F.R. § 1003.20(b), until November 7, 2000. As the Board did not grant his request, venue is proper in this court because Chicago was the location of the entry of his *in absentia* removal order. 8 U.S.C. § 1252(b)(2).

21, 1999, as he was under a final order of removal that "became final" prior to March 22, 1999. 8 C.F.R. § 208.18(b)(2).

After retaining new counsel, Rhoda Wilkinson Domingo (appellate counsel), Kay filed a third motion to reopen on October 15, 2002, arguing that former counsel rendered ineffective assistance by failing to file the CAT motion in a timely manner. In support of the October 15 motion, appellate counsel submitted: (1) a complaint to the California State Bar concerning former counsel; (2) a letter to former counsel detailing Kay's submission to the California Bar; (3) a copy of the attorney-client agreement between Kay and Attorney Fodiman; (4) the BIA's July 19, 2002 decision; and (5) a psychological assessment of Kay conducted by Elizabeth Schenk as well as her curriculum vitae. The psychological assessment by Dr. Schenk diagnosed Kay with Post Traumatic Stress Disorder (PTSD) and contained a detailed account of Kay's experiences in Burma. AR2 at 32-75.[3] In response to appellate counsel's ineffective assistance allegations, former counsel responded that he labeled the CAT motion a "motion to remand" and failed to file the CAT motion prior to June 21, 1999, because it was his understanding that "it was the longstanding policy of the Board to not subject motions to remand in a pending direct appeal of a case, such as Mr. Kay's, to the time restrictions imposed on motions to reopen." AR1 at 5.[4] On March 27, 2003, in a paragraph-long *per curiam* unpublished order, the BIA denied Kay's October 15 motion stating:

> We need not determine whether the respondent received ineffective assistance of counsel, however,

---

[3] All references to AR2 refer to the administrative record in petitioner's second appeal filed under No. 03-2125.

[4] All references to AR1 refer to the administrative record in petitioner's first appeal filed under No. 02-3140.

> because, in our judgment, the documentation sub-
> mitted by the respondent falls short of making a
> prima facie showing that "it is more likely than not
> that he . . . would be tortured" if he were to return
> to Burma. Although the country condition material
> in the record confirms some instances of brutality
> by the military in Burma, it has not been prima
> facie established that it is more likely than not that
> respondent will be subject to such treatment.
> Accordingly, the motion is denied.

(internal citations omitted). Under 8 U.S.C. § 1252(b)(1), an
applicant must petition for review in this court within 30
days of the final order of removal. The Board entered its
first order of removal on July 19, 2002, and Kay filed his
first petition for review in this court on August 19, 2002.
The Board entered its second order on March 27, 2003, and
Kay filed his second petition for review on April 25, 2003.
Therefore, both appeals were timely. On April 28, 2003, we
consolidated review of the petitioner's two appeals of the
BIA's July 19, 2002 order (No. 02-3140) and March 27, 2003
order (No. 03-2125).

## B.  Basis for Relief

   Seeking asylum, withholding of removal, and protection
under CAT, Kay argues that he will be subjected to pers-
ecution and torture at the hands of the Burmese government
if returned to his native country. The Burmese government
has a long history of violating human rights, suppressing
political speech, and persecuting ethnic and religious minor-
ities. *See* Bureau of Democracy, Human Rights, and Labor,
United States Department of State, *Burma, Country Reports
on Human Rights Practices 2002* (March 31, 2003),
http://www.state.gov/g/drl/rls/hrrpt/ 2002/18237.htm (last
viewed October 8, 2004) (2002 Burma Country Report). The
2002 Burma Country Report indicates that Burma is still

ruled by a military junta which has been reported to kill, rape, and place its citizens in forced labor camps, as well as torture and beat political detainees suspected of espousing pro-democratic ideologies. *See id.*; *Lwin v. INS*, 144 F.3d 505 (7th Cir. 1998) (addressing Burma's authoritarian military regime and its past brutality against pro-democratic student protesters).

During his childhood, Kay alleges that his father was an active member and sergeant in the Kachin Independence Association (KIA), a political opposition group to the Burmese government. Though Kay was not an active member of KIA, its members frequently visited his home. He recalls that as a child his father was tortured and his brother killed by government soldiers. He also claims that while attending classes at Hlaing College in Rangoon, he became involved in student rallies and demonstrations to raise consciousness about the Burmese government's human rights violations. He states that he was arrested twice by Burmese military officials in Rangoon. On the first occasion, December 3, 1996, in Shwe Dagon Pagoda, he was arrested after a student protest and detained for several hours. He was subsequently released but went into hiding in Kun Gyan Gon. On the second occasion, he claims he was held by Burmese military men for two weeks and beaten severely. According to Dr. Schenk, he still carries scars on several parts of his body where the soldiers beat him. AR1 at 66. After this incident his family arranged for him to flee Burma and seek asylum in the United States.[5]

---

[5]  In his Form I-589 application for asylum, which also serves as an application for CAT relief, Kay stated the following:

> When I was young my father was a member of the Kachin Independence Association. I had one brother and two sisters. One day while my father was away from home government soldiers came to look for him. Not

(continued...)

---

[5]  (...continued)

finding my father, the soldiers took my brother outside of the house and shot him to death.

At that time we lived at Lon Zan, a small village in the Kachin State. Government soldiers would come to the village and take away men and women to forced labor camps to build new roads. One time my father was taken to these camps and when he returned, he told us that he was forced to work and, beaten by the soldiers and was fed only one meal a day. After that, whenever soldiers approached the village, my father went to hide in the jungle.

When I was about fourteen years old, one night the soldiers came and burned our village. They shouted death to the KIA supporters. Our house was nearly destroyed. KIA troops came to our village that same day and tried to follow the soldiers. The soldiers had disappeared into the mountains, and could not be found.

About a week later, my father took our family to see the KIA chief in Myitkyina. For our safety, my father requested permission from the chief for all of us to move to Rangoon. The chief agreed and told my father to keep in contact. Our family moved to Rangoon.

If returned to my country, I fear that I will be caught by the authorities and sent to prison and suffer the abuses and torture by the guards. In Burma the people are not allowed any legal representation and do not have any human rights. Some students who were taken to prison have died at the hands of the prison authorities. There are several prisons around the country, and parents and relatives are not informed as to which prison their son or daughter is incassarated [sic]. The dead body of one student leader who died in hospital from injuries sustained at prison, was allowed to be identified by one close relative, and only that person was allowed to accompany the body to the cemetary [sic]. His own parents did not

(continued...)

Kay attached the following evidence to his Form I-589: (1) several newspaper articles which corroborate his account of the atrocities committed by the Burmese military; (2) a Hlaing College registrar form stating that Kay was a third year student at the University from 1996 to 1997; (3) a letter from the Pan Kachin Development Society in California stating that Kay, as a member of the Kachin ethnic minority, faces "imminent danger" if returned to Burma; and (4) a 1946 United States War Department release attesting to the bravery of the "Kachin Rangers" in World War II and discussing their extensive combat training. AR1 at 93-147. Of particular note, Kay attached several articles concerning the December 3, 1996 student protests in Rangoon. The first article, dated December 4, 1996, from the Pacific Daily News, entitled "Burma riot police disperse night-long student protest," states that over 150 heavily armed guards were responsible for breaking up a pro-democratic student protest in the City of Rangoon. Another article, dated December 8, 1996, from the same newspaper, entitled, "Students defy Burma military, stage pro-democratic protest," stated that over 487 students were detained after the December 3 pro-

---

[5]  (...continued)

　　 get to see their own son. The Government tried to coverup such abuses, but hospital staff leaked the news. I am afraid such abuses could happen to me also.

　　 I was arrested, detained and interrogated in Rangoon on 3 Dec., 96, for participating in student demonstrations against the government I was arrested at the Shwe Dagon Pagoda by riot police, and was taken to the old race track where I was detained and interrogated. I was warned that I would be in serious trouble if this happened again. I was photographed and later released. They detained me for about five hours. I returned home and in about a week I had to leave the house to hide from the authorities.

AR2 at 145-149.

test against government/military oppression. Kay also attached three other articles which addressed the scope and brutality of the government's reaction to the student protests. *Id.*

## II.  ANALYSIS

### A.  Motion to Reopen for Asylum or Withholding of Removal

We first turn to Kay's motion to reopen for consideration of his asylum and withholding of removal eligibility. Under the Immigration and Nationality Act (INA), an *in absentia* deportation order may be rescinded if the applicant files a motion to reopen "within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1))." 8 U.S.C. § 1229a(b)(5)(C).[6] If an applicant is not alleging exceptional circumstances or a lack of notice for his failure to appear, he must file his motion to reopen "within 90 days of the date of entry of a final administrative order of removal." *Id.* at § 1229a(c)(6)(C)(i); 8 C.F.R. § 208.2(c)(3)(ii). Subsection (e)(1) defines "exceptional circumstances" as "serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances beyond the control of the alien." 8 U.S.C. § 1229a(e)(1) (internal parentheses omitted).

We review the denial of a motion to reopen an order of removal entered *in absentia* for abuse of discretion, *Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir. 1999); *Ursachi v. INS*, 296 F.3d 592, 594 (7th Cir. 2002), and may only examine

---

[6] An applicant may file a motion to reopen any time upon a showing that he did not receive proper notice of the hearing. 8 U.S.C. § 1229a(b)(5)(C)(ii). Kay does not argue that he did not receive notice, thus that is not an issue on appeal.

the validity of the notice afforded Kay, his stated reasons for failing to appear, and whether removability has been established, 8 U.S.C. § 1229a(b)(5)(D). Kay's proffer to this court that he suffered from PTSD, understood little English, was *pro se*, and notified the court of his change of address does not support a finding of "exceptional circumstances." Kay fails to explain how his PTSD prevented him from attending the September 9 hearing. *See Ursachi*, 296 F.3d at 594 (finding that illness must be documented and give details sufficient to excuse alien's absence). Nor does Kay argue that he failed to receive or apprehend the notice afforded him. *See Nazarova*, 171 F.3d at 483 (immigration court may provide notice in English only). Kay's *pro se* status, while significant, is alone insufficient to excuse his absence because he does not dispute that he received notice. Finally, Kay's ignorance of the law, i.e., his mistaken belief that a Change of Address Notice would serve to change the venue of his hearing, also does not amount to an exceptional circumstance. *See* 8 C.F.R. § 1003.20(b) (stating an applicant must file a motion to change venue with the Immigration Court). The Immigration Court, upon receiving his Change of Address Notice, delayed his hearing but clearly stated it would be held in Chicago. Therefore, we cannot find that the BIA abused its discretion by denying Kay's motion to reopen the proceedings for a determination of his asylum or withholding of removal eligibility.

**B.  Timeliness of Motion to Reopen for a Determination of CAT Eligibility**

While we conclude that Kay was not entitled to recision of his *in absentia* order to consider his eligibility for asylum and withholding of removal, his motion to reopen for a

determination of his CAT eligibility is a separate matter.[7] We find that the BIA incorrectly deemed Kay's CAT motion untimely and failed to provide a reasoned basis for its denial on the merits.

As it relates to the timeliness of Kay's November 7, 2000 motion to reopen, this case presents the question: when does an *in absentia* order of removal "become final" for the purposes of determining the deadline for an application to reopen proceedings under CAT? According to its regulations:

> An alien under a *final order of deportation, exclusion, or removal that became final prior to March 22, 1999* may move to reopen proceedings for the sole purpose of seeking protection under § 208.16(c). Such motions shall be governed by §§ 3.23 and 3.2 of this chapter. . . . The motion to reopen shall not be granted unless: (i) [t]he motion is filed within [sic] June 21, 1999; and (ii) [t]he evidence sought to be offered establishes a *prima facie* case that the applicant's removal must be withheld or deferred under §§ 208.16(c) or 208.17(a).

8 C.F.R. § 208.18(b)(2) (emphasis added). However, "[a]n alien who is in exclusion, deportation, or removal proceedings on or after March 22, 1999 may apply for withholding of removal under § 206.16(c), and, if applicable, may be considered for deferral of removal under § 208.17(a)." *Id.* § 208.18(b)(1).

---

[7] When Kay first applied for asylum or withholding of removal, CAT relief was unavailable because the BIA refused to exercise jurisdiction over CAT motions as CAT was not a self-executing treaty and no regulations implementing the convention had been drawn. *See In re H-M-V-*, 22 I. & N. Dec. 256 (BIA 1998) (declining to exercise jurisdiction over CAT motions prior to the creation of regulations concerning CAT implementation).

Generally, an agency's interpretation of its regulations is entitled to due deference; however, when the agency's interpretation contravenes the plain language of the regulation, congressional intent trumps. *Zheng v. Ashcroft*, 332 F.3d 1186, 1193-94 (9th Cir. 2003) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)). We recognize that the IJ's September 9, 1998 *in absentia* order was a final order of removal; however, once Kay filed a timely motion to reopen, under the plain language of the CAT regulations, his deportation order did not "become final" until that motion to reopen was denied by the BIA on July 19, 2002. In its July 19, 2002 order, the BIA summarily concluded, without analysis, that the *in absentia* order of removal became final September 9, 1998, the same day it was entered. While we acknowledge that motions to reopen are generally disfavored and aliens who fail to appear for hearings are to be rebuked, for the reasons stated below, we find that Kay was not subject to the June 21, 1999 CAT filing deadline as he was in deportation proceedings after March 22, 1999.

First, in the context of an *in absentia* order, the only way to "appeal" the removal order is to file a motion to reopen the proceedings. 8 U.S.C. § 1229a(b)(5)(C). The plain language of the CAT regulations contemplate that the appeals process affects the timeliness determination by drawing a distinction between the time an order is "final" and when it "becomes final." 8 C.F.R. § 208.18(b)(2). Further, this court has held that a motion to reopen is "part and parcel" of the underlying removal proceeding. *Nwaokolo v. Ashcroft*, 314 F.3d 303, 306 (7th Cir. 2002) (per curiam). Therefore, like a merits determination, such as a denial of asylum relief, we find that an *in absentia* order of removal becomes final "when the Board renders its decision in a case on appeal or certification or, where no appeal is taken, when the time allotted for appeal has expired or the right to appeal is waived." *In re L-V-K-*, 22 I. & N. Dec. 976, 977-78 (BIA 1999) (en banc).

Moreover, upon the filing of a motion to reopen after an *in absentia* removal order has been entered, an applicant's removal is automatically stayed, 8 C.F.R. § 1003.23(b)(1)(v), in order to allow the Board to conduct an independent review of the order, *In re Cecilia Rivera-Claros*, 21 I. & N. Dec. 232 (BIA 1996) (applying reasoning to the 1994 version of the United States Code which is not materially different from current version). Once a deportation order is stayed, the Immigration Court is prevented from executing an alien's deportation. *In re M-S-*, 22 I. & N. Dec. 349, 354 (BIA 1998); *cf.* 8 U.S.C. § 1231(a)(1)(B) ("If the removal order is judicially reviewed and if a court orders a stay of removal of the alien," the Board's 90-day period to effectuate removal does not begin to run until "the court's final order" is entered.). We also note that Kay could not have appealed the entry of the September 9, 1998 *in absentia* order directly to this court without first exhausting his administrative remedies and "appealing" the IJ's decision to the BIA through a motion to reopen. *See Wijeratne v. INS*, 961 F.2d 1344, 1345-46 (7th Cir. 1992) (finding that BIA's decision denying motion to reopen is a "final order").

Finally, CAT relief is treated as a separate avenue for relief. An applicant may file a second motion to reopen for CAT relief without showing that the information presented was previously unavailable. 8 C.F.R. § 208.18 (b)(2). Given the Board's distinct treatment of the review of *in absentia* orders coupled with the nature of determining CAT relief, we find that the September 9, 1998 order of removal did not "*become* final" until the "appeals" process was terminated with the BIA's denial of Kay's appeal of his motion to reopen on July 19, 2002. Therefore, Kay was not required to meet the June 21, 1999 deadline.[8]

---

[8]  We recognize the importance of finality in the immigration process and the possibility that applicants may attempt to elongate the process in order to extend their time in this country, *see INS*

(continued...)

Even if we were to find that Kay was subject to the June 21, 1999 filing deadline, we would still be permitted to review the Board's substantive decision denying Kay CAT relief. In its March 27, 2003 order, the Board considered and denied Kay's October 15, 2002 motion to reopen for consideration of his CAT eligibility on the merits. The Board could have decided the issue of Kay's CAT entitlement as an element of the ineffective assistance of counsel determination, finding that he was not prejudiced by the error and addressing his compliance with the requirements of *In re Lozada*, 19 I. & N. Dec. 637 (BIA 1988) (requiring an applicant to: (1) file an affidavit explaining the agreement between the applicant and former counsel and listing what actions counsel failed to take; (2) grant former counsel an opportunity to respond; and (3) indicate whether former counsel's error was reported to disciplinary authorities). However, the Board deemed the ineffective assistance of counsel issue moot and stated that the documentation submitted by Kay failed to establish a *prima facie* case for eligibility under CAT. As the Board dismissed Kay's motion on the merits, we have jurisdiction to review its substantive determination. *See Avelar-Cruz v. INS*, 58 F.3d 338, 340 (7th Cir. 1995) ("Because the Board did not consider the argument waived and addressed its merits, we have jurisdiction to review the Board's resolution of that issue."). We now turn to Kay's motion for relief under CAT.

## C. Eligibility Under CAT

To qualify for withholding or deferral of removal under CAT, an applicant must prove "that it is more likely than not that he or she would be tortured if removed to the pro-

---

[8]  (...continued)
*v. Abudu*, 485 U.S. 94, 107-110 (1988), however, we emphasize that this ruling applies to a narrow group of applicants and solely addresses the filing date for motions to reopen under CAT.

posed country of removal." 8 C.F.R. § 208.16(c)(2). Under 8 C.F.R. § 208.18(a)(1), torture is defined as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

An IJ reviews the following factors when making this determination: (1) evidence of past torture of the alien; (2) whether the alien is able to relocate to another part of the country where torture is not likely; (3) evidence of "gross, flagrant or mass violations of human rights within the country of removal"; and (4) other relevant information. *Id.* § 208.16(c)(3)(i)-(iv). An applicant may meet this standard without corroborative evidence. *Id.* § 208.16(c)(2). Upon meeting the standard, relief must be granted. *Id.* § 208.17(a).

Generally, the Board may deny an applicant's motion to reopen if he fails to comport with regulatory requirements or fails to establish a *prima facie* case of eligibility for the underlying relief sought. *In re L-O-G-*, 21 I. & N. Dec. 413, 414 (BIA 1996). In addition, where the underlying relief sought is itself discretionary, the Board may deny the motion on that ground alone. *Id.* We review this determination for abuse of discretion. *Mansour v. INS*, 230 F.3d 902, 906-07 (7th Cir. 2000). "The BIA's decision to deny [a] motion to reopen will be upheld 'unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invid-

ious discrimination against a particular race or group.'" *Id.* at 907. A motion to reopen under CAT, however, is distinct from an asylum claim and deserves independent substantive consideration. *Id.*

According to the Board, when

> ruling on a motion to reopen requires the exercise of judgment regarding eligibility for the relief sought, the Board historically has not required a conclusive showing that, assuming the facts alleged to be true, eligibility for relief has been established. Rather, we have been willing to reopen where the new facts alleged, when coupled with the facts already of record, satisfy us that it would be worthwhile to develop the issues further at a plenary hearing on reopening.

*In re L-O-G-*, 21 I. & N. Dec. at 418-19 (internal quotation omitted). And when an applicant "is asking that her case be reopened so that she may apply for a form of relief which was unavailable to her" and "has not had an opportunity to present her application before the Immigration Judge, the Board will look to whether the alien has proffered sufficient evidence to indicate that there is a reasonable likelihood of success on the merits. . . ." *In re M-S-*, 22 I. & N. Dec. at 356-57.

We find that the BIA's decision to deny Kay relief under CAT was "made without a rational explanation." *See Mansour*, 230 F.3d at 906-07; *see also Awe v. Ashcroft*, 324 F.3d 509, 513-14 (7th Cir. 2003) (affirming in dicta reasoning of *Mansour* that BIA is required to issue opinions with rational explanations and adequate analysis of the record). In the first instance, on July 19, 2002, Kay's motion was denied without review as it was deemed untimely, while in the second instance, the terse March 27, 2003 order leaves this court unable to review the BIA's factual or legal analysis.

The BIA summarily states that "the country condition material in the record confirms some instances of brutality by the military in Burma." This sentence (albeit an understatement of the human rights situation in Burma) clearly supports Kay's position. Directly following this statement, however, the Board regurgitates the legal standard for protection under CAT with no analysis or explanation and then summarily denies Kay's motion for relief. It is unclear to this court what evidence the Board reviewed or even considered in coming to its conclusion. *See Mansour*, 230 F.3d at 908 (vacating and remanding for further proceedings when BIA failed to address United States State Department Report concerning country conditions because BIA is required to "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted."); *Chowdhury v. Ashcroft*, 241 F.3d 848, 852 (7th Cir. 2001) (noting that it is the duty of the Court of Appeals to "ensure that the Board's legal interpretations stay within the boundaries permitted to it and that it has not unreasonably failed to consider relevant factual information").

Moreover, our inability to decipher whether the BIA had a reasoned basis for its decision to deny Kay relief is further underscored by its citation to *In re Y-L-, A-G-, R-S-R-*, 23 I.& N. Dec. 270 (BIA 2002) (finding no protection under CAT for Haitian, Jamaican, and Dominican applicants convicted of felony crimes because applicants failed to show governmental connection to any possible torture upon removal to native country), *In re S-V-*, 22 I. & N. Dec. 1306 (BIA 2000) (same rationale for Columbian applicant), and *In re J-E-*, 23 I. & N. Dec. 291 (BIA 2002) (finding no "torture" under CAT based upon potential indefinite detention of felon deportee to Haiti), which are factually distinguishable from the case at bar. The Board provides no explanation or discussion concerning the applicability of these cases to the disposition of Kay's CAT claim. We fail to see how the first

two cases, which highlight the need for government in-volvement or inaction as an element for relief under CAT, impact disposition of Kay's application. After all, Kay alleged direct government involvement. Nor is the Board's citation to *In re J-E-* enlightening, as that case bases its denial of relief on the applicant's lack of personal past persecution and Kay alleged such past persecution. *See Guchshenkov v. Ashcroft*, 366 F.3d 554, 558, 560 (7th Cir. 2004) (vacating orders of removal and remanding for further proceedings finding IJ and BIA decisions unreasoned, incomplete, and lacking in analysis) (listing cases); *Bace v. Ashcroft*, 352 F.3d 1133, 1138 (7th Cir. 2003) (vacating order of removal and remanding for further proceedings on asylum eligibility where IJ failed to make a credibility or past persecution determination); *Azanor v. Ashcroft*, 364 F.3d 1013, 1021 (9th Cir. 2004) (remanding for determination of motion to reopen for CAT relief where Board tersely stated, with no analysis, that applicant failed to establish *prima facie* case).

Most importantly, it is also difficult to see how Kay's allegations and supporting evidence do not establish *prima facie* eligibility under CAT. First, Kay's asylum application alleges that he personally suffered past persecution and may suffer future persecution at the hands of the Burmese government due to his political activities and family affil-iations. He alleges personal prior detention and physical abuse at the hands of the Burmese military as well as phy-sical abuse and even murder of his family members. *Cf. Pelinkovic v. Ashcroft*, 366 F.3d 532, 542 (7th Cir. 2004) (affirming BIA's denial of a motion to reopen application for protection under CAT when applicant failed to provide a "particularized showing" that he or his family would be individually targeted for torture). Second, Kay's allegations of Burma's "gross, flagrant [and] mass violations of human rights" are supported and corroborated by the United States Country Reports on Human Rights Practices in Burma as well as the numerous newspaper articles which are part of

the administrative record. *See Naim v. Ashcroft*, 354 F.3d 652, 656 (7th Cir. 2004) (remanding to IJ for a determination of whether there is a "clear probability" of future persecution under withholding of removal standard when country report supports applicant's claims of persecution and IJ opinion is riddled with factual errors). Finally, Kay was able to corroborate his allegations concerning detention following the student protests in December 1996 with newspaper articles as well as providing evidence that he was a student at the time of the protests.

### III.  CONCLUSION

Kay's travels through the immigration labyrinth have been less than smooth. In a case such as this, where the applicant presents a strong case for relief, the underlying relief sought is nondiscretionary, the applicant has not had an opportunity to be heard, and the BIA issues a cursory opinion, due process has been severely undermined.

This court has consistently recognized that aliens are entitled to due process during deportation proceedings, which includes a right to be heard. *Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004). Given the handling of this case, we question whether the proceedings thus far have satisfied basic Fifth Amendment standards. *See Chowdhury*, 241 F.3d at 853 (confirming that immigration proceedings must comport with basic due process standards); *Ambati v. Reno*, 233 F.3d 1054, 1061 (7th Cir. 2000) (reasoning that right to due process is not violated when alien permitted to present claim fully and fairly).

Further, while we recognize that Kay has no Sixth Amendment right to effective counsel in immigration proceedings, *Stroe v. INS*, 256 F.3d 498, 500 (7th Cir. 2001), this court has nonetheless acknowledged the possibility that counsel's ineffectiveness may rise to the level of a due

process violation if the alleged errors likely affected the outcome of the proceeding, *Ambati*, 233 F.3d at 1061. The Board has also recognized that ineffective assistance of counsel may require a case to be reopened if the attorney's inadequate representation caused the proceedings to be "so fundamentally unfair that the alien was prevented from reasonably presenting his case" and that the alien was prejudiced by the counsel's failures. *In re Lozada*, 19 I. & N. Dec. at 638.

Kay's initial counsel's performance was both procedurally and substantively deficient. Procedurally, he erroneously labeled the November 7, 2000 motion for relief under CAT a "motion to remand" under the mistaken belief that using the word "remand" as opposed to "reopen" would toll the time for application. However, the title of a motion does not dictate its characterization by the Board nor does it allow counsel to evade procedural requirements. *Krougliak v. INS*, 289 F.3d 457, 461 (7th Cir. 2002).

Substantively, his performance was also wanting. He attached only one page of Kay's asylum application to the motion and the 1999 Burma Country Report when there was clearly more evidence in the record to support Kay's position. *See* 8 C.F.R. § 1003.23(b)(3) ("Any motion to reopen for the purpose of acting on an application for relief must be accompanied by the appropriate application for relief and *all supporting documents*.") (emphsis added). Furthermore, former counsel's supporting brief simply states that Kay was "arrested, detained, and interrogated in Rangoon on 3 Dec. 96" without providing any details, discussion, or supporting analysis. This infirmity is especially grave given that "[e]vidence of past torture inflicted upon the applicant" is of paramount importance. *See* 8 C.F.R. § 208.16(c)(3)(i); *In re J-E-*, 23 I. & N. Dec. 291, 303 (BIA 2002) (reasoning that evidence of personal past torture is paramount even when there is evidence of "gross, flagrant, or mass violations of human rights in a particular country" because the focus of

CAT is on whether that individual is at risk). Finally, the brief fails to explain or point to the wealth of corroborative evidence in the record. Appellate counsel, on the other hand, conducted a psychological assessment of the applicant and made specific reference to Kay's personal abuse at the hands of the Burmese military in her motion for CAT relief filed on October 15, 2002. It would seem that former counsel's error had the effect of denying Kay an opportunity to be heard, which may be an example of ineffective assistance which rises to the level of a due process violation.

As appellate courts should not make substantive determinations granting immigration relief in the first instance, *INS v. Ventura*, 537 U.S. 12, 16 (2002), we remand for reconsideration of Kay's CAT motion. Upon remand, the Board should consider the entire record before it as well as allow the parties to supplement the record. *See Bace*, 352 F.3d at 1141-42. It may also behoove the Board to allow Kay an opportunity to present his case in a hearing format. Therefore, we AFFIRM the Board's July 19, 2002 decision insofar as it denied Kay's motion to reopen for consideration of his asylum and withholding of removal motions. However, we REVERSE the Board's March 27, 2003 decision denying Kay's October 15, 2002 motion to reopen and remand this case to the Board for reconsideration of Kay's eligibility for relief under CAT.

**A true Copy:**

     **Teste:**

                      _____
                      *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*