**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 2, 2020[*]
Decided September 9, 2020

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1193

| | |
|---|---|
| NFOR GIBSON TATA TANDAP, *Petitioner*, | Petition for Review of Orders from the Board of Immigration Appeals. |
| *v.* | No. A097-333-108 |
| WILLIAM P. BARR Attorney General of the United States, *Respondent*. | |

### O R D E R

Nfor Gibson Tata Tandap, an Anglophone citizen of Cameroon, challenges the denial of his motion to reopen his removal proceedings to seek asylum, withholding of removal, and relief under the Convention Against Torture. He sought reopening based on a material change in country conditions since his last hearing—namely the conflict between Anglophone Cameroonians and the Francophone majority that had killed thousands of Anglophone citizens and led to the displacement of hundreds of thousands more. The Board of Immigration Appeals denied the motion, finding that

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Tandap had demonstrated changed conditions but did not submit enough evidence to show that he would be singled out for harm if returned. Tandap has petitioned for review, asserting that the Board applied the wrong legal standard, ignored evidence, and failed to acknowledge his claim for relief under the Convention Against Torture. Because the Board abused its discretion by denying Tandap's motion to reopen, we grant the petition for review, vacate the order, and remand for further proceedings.

Tandap's proceedings have a protracted history which are reviewed here only in part. He entered the United States in 1992 on a student visa and overstayed. A decade later he married a United States citizen. In 2006, the government placed him in removal proceedings. The notice to appear charged him with remaining in the country longer than his visa permitted, *see* 8 U.S.C. § 1227(a)(1)(B), and committing two crimes of moral turpitude after his admission. *See* 8 U.S.C. § 1227(a)(2)(A)(ii). Tandap applied to adjust his status based on his marriage, *see* 8 U.S.C. § 1255(a), and an immigration judge granted the application. But the government, upon learning that Tandap had lied about a recent arrest, persuaded the Board to reopen the proceedings. The IJ then held additional hearings, denied Tandap's application to adjust his status as a matter of discretion, and ordered him removed; the Board upheld the decision. Because decisions over adjustment of status are discretionary, we dismissed Tandap's petition for lack of jurisdiction. *Tandap v. Holder*, 436 Fed. App'x. 718 (7th Cir. 2011).

In 2019, Tandap moved to reopen the proceedings based on the increasing violence towards Anglophone Cameroonians. *See* 8 C.F.R. § 1003.2(c)(2),(3)(ii). He supplemented his motion with an expert report by Dr. Charlotte Walker-Said, an Africana Studies scholar at the John Jay College of Criminal Justice who has extensively studied Cameroon's politics, history, and human-rights abuses. In her report, Dr. Walker-Said explained that conditions for Anglophones in Cameroon deteriorated significantly in 2016, when the government's violent response to peaceful protests escalated into a country-wide armed conflict. Tandap faces "grave danger" upon return, she opined, because his home city is the conflict's "epicenter" and would be listed on his national identification card (making him a target for arrest at any checkpoint around the country) and because his decades abroad, coupled with his father's long involvement with a prominent Anglophone political party, would lead to suspicions that he harbors Anglophone separatist sympathies. Tandap also submitted his own affidavit expressing fear that he would be targeted upon return for kidnapping or torture at the hands of Anglophone separatists. And he submitted a letter from an uncle in Cameroon describing a spate of such kidnappings for ransom, including that of a

family friend whose release was secured only after his captors were paid off by Tandap's family.

The Board of Immigration Appeals denied the motion to reopen. Acknowledging the increased violence that builds upon the past conflict between Cameroonian Francophones and Anglophones, the Board assumed that Tandap had demonstrated changed country conditions. But the Board concluded that Tandap had not established prima facie eligibility for the underlying relief sought: He had not shown either that he had experienced past persecution or that he would be singled out if he were returned to Cameroon.

Tandap petitioned for review, arguing that the Board misapplied the standard for reopening, ignored Dr. Walker-Said's conclusions about his risk of harm if returned to Cameroon, and failed to address his request for relief under the Convention Against Torture.

One month later, on the day that its brief was due, the government moved to remand the case so that the Board could clarify its rationale for denying the motion to reopen. Without admitting error, the government urged the Board to examine Tandap's prima facie eligibility for relief under the appropriate legal standard, to take into account Dr. Walker-Said's conclusions about Tandap's risk of harm, and to assess Tandap's request for relief under the Convention Against Torture. In the event that we denied its motion, the government requested a 30-day extension to file a response brief.

We denied the government's motion as "far too late." Motions for additional time, we noted, must be filed at least seven days before the brief is due. *See* CIR. R. 26. We ordered the government to file its brief within three days.

The government did so and, in its brief, renews its request that we remand this case to the Board for further proceedings. The government acknowledges our recent decision in *W.G.A. v. Sessions*, 900 F.3d 957, 963 (7th Cir. 2018), in which we explained that there must be a persuasive reason to grant an opposed remand. Such reasons, the government maintains, exist here. First, given the broad discretionary authority conferred upon the Board when assessing a motion to reopen, deference should be shown to the Board by allowing it to correct procedural irregularities or make any necessary findings. Second, regardless of whether this court grants the petition for review or allows a voluntary remand, the outcome would be the same: The decision whether to reopen can be made only by the Board. *See Ji Cheng Ni v. Holder*, 715 F.3d

620, 631 (7th Cir. 2013). The government made no substantive arguments relating to the motion to reopen. Tandap replied that he opposed the government's request to remand.

We do not find the government's reasons for a voluntary remand persuasive. With regard to its request for deference, the Board already had before it everything necessary to issue this decision in the first instance. *See W.G.A.*, 900 F.3d at 963 (denying an opposed request for a general remand without confession of error because the "Attorney General does not explain why the Board needs a second chance to apply case law that was available when it decided W.G.A.'s appeal"); *see also Ren v. Gonzales*, 440 F.3d 446, 448 (7th Cir. 2006) (granting a voluntary remand without government's concession of error so that Board could reconsider its decision "in light of the emerging case law"). Our review of the Board's decision does not undermine its broad discretion in handling motions to reopen, but directs the Board to errors it should avoid on remand. *See, e.g., W.G.A.*, 900 F.3d at 968–69. The ultimate decision on whether to grant the motion still lies with the Board. *Boika v. Holder*, 727 F.3d 735, 741 (7th Cir. 2013).

We also are not persuaded by the government's assertion that a voluntary remand would be "more efficient[]" and "not meaningfully different" from an adjudicated decision on the merits, given that the decision whether to reopen rests ultimately with the Board. A voluntary remand leads to no assurance that the Board will reissue a decision quickly or even address the errors identified by the government. As we observed in *W.G.A.*, "[i]n some cases where we have accommodated [requests for voluntary remands without confession of error], we have been disappointed: the Board has disregarded the Attorney General's stated reasons for remand." 900 F.3d at 963. Review by this court, by contrast, allows us to substantiate specific instructions to the Board to address on remand. *See id.* at 968–69.

Moving to the motion to reopen, we review the Board's denial for abuse of discretion and, here, we find the Board erred in three ways. First, the Board held Tandap to the wrong standard by making conclusive findings about his fear of future persecution. The Board denied the motion because Tandap did not show that "he would be individually singled out if returned" or that "all Anglophones [in Cameroon] are in danger of harm." But at this stage of the proceedings, Tandap needed only to submit evidence showing "a reasonable likelihood of success on the merits." *Boika*, 727 F.3d at 742 (quoting *In re A–N– & R–M–N–*, 22 I. & N. Dec. 953, 956 (BIA 1999)). Further, Tandap did not need to demonstrate a reasonable likelihood that he would be singled out as long as he could show "a pattern or practice" of persecution of Cameroonian Anglophones. 8 C.F.R. § 208.13(b)(2)(iii). The Board did not explain why

such a finding could not be supported by Dr. Walker-Said's conclusions about the Cameroonian Anglophones' current plight. *See Boika*, 727 F.3d at 742.

Second, the Board ignored Dr. Walker-Said's opinion about the likelihood of harm that Tandap would suffer upon return based on his home city, his diaspora status, and his father's political involvement. All these factors, she opined, would place Tandap in grave danger anywhere in the country. Although the Board credited her account of Cameroon's changed conditions, it failed to explain why it rejected her conclusions about Tandap's risk of harm.

Finally, the Board erred by ignoring Tandap's claim for relief under the Convention Against Torture. In his motion to reopen, Tandap highlighted this claim as the "first and foremost" form of relief upon which he sought reopening. A motion to reopen under the Convention "is distinct from an asylum claim and deserves independent substantive consideration." *Kay v. Ashcroft*, 387 F.3d 664, 674 (7th Cir. 2004). Tandap supported this claim with his own affidavit as well as evidence from his uncle and Dr. Walker-Said attesting to the likelihood that, if removed, he would be tortured at the hands of the government (for suspected separatist sympathies) or rebel separatists (seeking to extort his family for money). *See* 8 C.F.R. § 208.16(c)(2); *Kay*, 387 F.3d at 673–74. The failure to provide any rational explanation for denying this claim is an abuse of discretion. *See Moosa v. Holder*, 644 F.3d 380, 384 (7th Cir. 2011).

Although we conclude that the Board abused its discretion, "[w]e take no position on the merits of the motion to reopen. The only ground of our decision is the Board's failure to articulate a reasoned response to the motion." *Boika*, 727 F.3d at 741 (quoting *Mekhael v. Mukasey*, 509 F.3d 326, 328 (7th Cir. 2007)).

Accordingly, we GRANT the petition for review, VACATE the Board's decision, and REMAND for further proceedings consistent with this order.